The STATE of Ohio, Appellee,

v.

ANTILL, Appellant.

[Cite as *State v. Antill* (1993), 91 Ohio App.3d 589.]

Court of Appeals of Ohio,
Washington County.

No. 92 CA 26.

Decided Nov. 16, 1993.

*Robert Smith,* Assistant Law Director, for appellee.

*James F. Dunn,* for appellant.

GREY, Judge.

This is an appeal from the Marietta Municipal Court. After the court denied his motion to suppress, Antill changed his plea to no contest and was found guilty of driving under the influence and driving while under suspension. We affirm.

On June 15, 1992, Velma Hoover and Ricky Antill, who lived together in a trailer park on State Route 7, got into an argument. Hoover left the home, went across Route 7 to a neighbor and called the sheriff. The sheriff's office dispatched Deputy Stackpole and sent Deputies Moon and Coppernoll as back up. When the deputies arrived, Hoover told them Antill was drunk, had been driving around the neighborhood looking for her and would not leave her home. She described his car and gave them his license plate number. As the deputies headed back across Route 7 towards Hoover's trailer, they saw Antill's car pull out onto Route 7 and head south.

The deputies followed the car and pulled it over. When Antill got out, he staggered and smelled strongly of alcohol. The deputies administered a field

sobriety test, which Antill failed. He was taken to the patrol post and tested .263 on the BAC Verifier. Further investigation revealed that Antill had no driving privileges and that he had a prior OMVI within the past five years. He was cited for violating R.C. 4511.19(A)(1) through (A)(3), drunk driving, and R.C. 4507.02, no operator's permit.

Antill pleaded not guilty to both counts and filed a motion to suppress. A hearing was held and his motion was denied. Antill changed his plea to that of no contest and was found guilty on both counts. He timely filed a notice of appeal and assigns the following error:

"The decision of the Trial Court is unsupported by the evidence and is against the manifest weight of the evidence."

Antill challenges the court's refusal to suppress the evidence against him and argues that the police action, based on the informant's statements, was an unwarranted intrusion upon his Fourth Amendment rights.

When a reviewing court determines whether a stop was proper, it must consider the totality of the circumstances. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044; *State v. McCaig* (1988), 51 Ohio App.3d 94, 554 N.E.2d 925. In *State v. Hurt* (July 23, 1991), Gallia App. No. 90 CA 16, unreported, 1991 WL 136738, we advanced a two-prong test to determine whether the stop and subsequent arrest were proper. First, the court must determine whether the officer had a reasonable and articulable suspicion to warrant the initial stop. Next, the court must determine whether the officer had probable cause to arrest the driver for driving under the influence. See, also, *State v. Simmons* (Aug. 30, 1990), Washington App. No. 89 CA 18, unreported, 1990 WL 127065.

Antill challenges the validity of the initial stop based on Hoover's statements and says, since the officers were there to remove him from the area, once he left there could be no reasonable articulable suspicion for a traffic stop.

In *State v. Mulholland* (July 22, 1992), Gallia App. No. 91 CA 18, unreported, 1992 WL 174698, we noted that anonymous phone calls stating that a party is driving while intoxicated are insufficient to justify a stop for driving under the influence. To be constitutionally valid, such information requires corroboration that the informant was reliable or his information was accurate. *Id.* citing *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP–1298 and 89AP–1299, unreported, 1990 WL 135867. In *Mulholland*, we applied a "totality of the circumstances" test and found the stop valid because the officer recognized the defendant from a prior OMVI, had recently read that her driver's license had been suspended and had information from the LEADS computer that the defendant had no driving privileges.

In *Ramsey, supra,* the Tenth District noted that factors to consider when acting on an informant's tip are his veracity and reliability on one hand and his basis of knowledge on the other. In *Ramsey,* a private citizen, who left her name and phone number, reported a drunk driver. The trial court denied Ramsey's motion to suppress and, upon review, the court of appeals reversed, holding:

"[T]he simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop.

" * * *

"[T]o meet the Fourth Amendment's central test of reasonableness, an investigatory stop must be supported by ' * * * a reasonable and articulable suspicion that the person seized is engaged in criminal activity.' *Reid v. Georgia* (1980), 448 U.S. 438, 440 [100 S.Ct. 2752, 2754, 65 L.Ed.2d 890]. Such a stop is proper when ' * * * specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' *Terry* [*v. Ohio* (1968)], *supra* [392 U.S. 1], at 21 [88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905]. The police must have a reasonable suspicion that the particular individual being stopped is or was engaged in criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 418 [101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629].

" * * *

"[S]ome courts have held that a citizen-informant who is the victim of or witness to a crime is presumed reliable. *Commonwealth v. Weidenmoyer* ( [Pa.]1988), [518 Pa. 2] 539 A.2d 1291; *State v. Ege* (Neb.1988), [227 Neb. 824] 420 N.W.2d 305.

"In each of these cases, however, the court required that the witness or victim relate the basis for their knowledge or observations. This is consistent with the totality of the circumstances approach as it satisfies the basis of knowledge factor." *Id.* at 4–5 and 9.

In *State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91–CA–13, unreported, 1991 WL 270665, the court discussed the applicable amount of scrutiny when the informant is a private citizen who is otherwise uninvolved. In *Carstensen,* the defendant was stopped based on two 911 calls describing a drunk driver. The trial court granted his motion to suppress and the court of appeals reversed, stating:

"A police stop of a motor vehicle is a significant intrusion requiring justification as a 'seizure' within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution. *State v. Heinrichs* (1988), 46 Ohio App.3d 63 [545 N.E.2d 1304]. Less than probable cause for an arrest is needed to make an investigative stop, but at a minimum, the stopping officer must have specific and

articulable facts indicating that the stop is reasonable. *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 110–111 [534 N.E.2d 906, 908], and cases cited therein. Ohio decisions look to the totality of the facts and circumstances to determine whether the stop was reasonable.

" * * *

" * * * Information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable. The ordinary citizen is on a different footing from a police informant who is himself implicated in criminal conduct; the credibility and reliability of the latter must be apparent before the information can be acted upon. *State [City of Fairborn] v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, unreported, at 4–5 [1987 WL 20264]." *Id.* at 3–4.

 The statements of a participant or witness to a criminal act are usually regarded as intrinsically reliable and further evidence of reliability is not needed. See *United States v. Gaviria* (C.A.5, 1986), 805 F.2d 1108.

In *State v. Duncan* (June 30, 1992), Wood App. No. 91–WD–095, unreported, 1992 WL 144737, the Sixth District noted that when the informant is a victim or witness, the tip need not be as rigorously scrutinized as when the informant is anonymous. In *Duncan,* the witness knew the defendant and his girlfriend, knew there had been past domestic violence and thought he might be abducting his girlfriend.

"The facts the officer relies upon to form a reasonable suspicion may be supplied by others, as well as from personal observations. *Adams v. Williams* (1972), 407 U.S. 143, 147 [92 S.Ct. 1921, 1924, 32 L.Ed.2d 612, 617]. The reasonableness of the officer's reliance on an informant's information to support a finding of a 'reasonable suspicion' must be judged by looking at the informant's reliability, credibility, etc., under the totality of the circumstances. *United States v. Hensley* [1985], *supra* [469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604]; *Adams v. Williams, supra;* and *Illinois v. Gates* (1983), 462 U.S. 213 [103 S.Ct. 2317, 76 L.Ed.2d 527].

" * * * We hold that while a witness/victim informant's tip need not be as rigorously scrutinized as an anonymous police informant's tip, it must still be examined under a totality of the circumstances analysis to determine if an officer could reasonably rely upon it." *Id.* at 7–8.

In *Whitehall v. Rains* (Apr. 4, 1991), Franklin App. Nos. 91AP–05 and 91AP–06, unreported, 1991 WL 47431, the Tenth District reversed the trial court's grant of a motion to suppress where the informant was a victim of domestic violence. In so doing, the court based its decision on two factors. First, the defendant, who was being followed by a police officer, parked his car partially on

the traveled portion of the road. Second, the officer had reasonable suspicion to justify a *Terry*-type stop based on the victim informant's statements:

"Even if it were a *Terry* stop, there was ample information before the officer to justify the investigatory detention of defendant. As previously noted, the officer had received face-to-face information from an assault victim who immediately filed assault charges against defendant. The victim alleged that the assault occurred while defendant was drinking, a not uncommon cause of domestic violence, and that defendant was probably drinking in a specifically identified bar. Defendant was observed departing that bar at closing time. Defendant stopped his automobile without request with his vehicle extending into the street.

"There is a strong presumption that a citizen informant who is a victim to a crime is reliable. See *Commonwealth v. Weidenmoyer* (1988), [518 Pa. 2] 539 A.2d 1291; *State v. Ege* (Neb.1988), [227 Neb. 824] 420 N.W.2d 305. The circumstances regarding the informant in this case gives a very strong indication of reliability: the first hand description of the assault; the filing of the criminal charges; and the description of defendant's car and where he was probably drinking. The latter two matters were confirmed by the arresting officer's own observations. Added to that information is the voluntary stopping of defendant with his car extending into the roadway." *Id.* at 4–5.

In *Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, unreported, 1987 WL 20264, the wife of the defendant called the police to report a domestic dispute between herself and the defendant. She said the defendant left in an intoxicated state "waiving [*sic* ]" a gun. This information and a description of the defendant's vehicle were broadcast to the arresting officer.

Here, as in *Adamson*, the defendant claims the informant was unreliable. In *Adamson*, the defendant and his wife had a divorce action pending at the time of the incident. The court noted that a person's spouse is presumed to be a reliable witness, stating:

"Here, the wife reported that she witnessed the defendant commit criminal activity. Thus her information was presumed to be reliable, and, based upon that information, the police had articulable suspicion to stop the defendant and arrest him after administering the field sobriety test.

"Although it would have been much more damaging to the defendant's case, the fact that the police officer did not witness the defendant driving erratically or state that he smelled alcohol on the defendant's breath does not warrant a conclusion that the police lacked articulable suspicion. The safety of the public was at risk. The defendant's own spouse notified the police that he was driving in an intoxicated state and was carrying a firearm. Given this evidence, the police acted properly in stopping the defendant and in administering the field

sobriety test. Based on the defendant's poor performance on the field sobriety test and the statements made to the police by the defendant's wife, there was ample probable cause for the police officer to place the defendant under arrest for D.U.I." *Id.* at 5.

The issue was: Did the arresting officer have an articulable and reasonable suspicion that appellant was violating the law when he made the traffic stop? When a citizen identifies himself and reports a crime to the police, does that citizen have the right to expect the police officer to believe he is telling the truth? And, if based on the information and other circumstances, the police officer does believe the citizen, does the officer have reasonable suspicion to make an investigatory stop? Put another way, would the officer be doing his job if, in spite of what he heard from Hoover, he permitted Antill to drive off without further inquiry?

The record shows that Hoover told the deputies Antill was highly intoxicated and was driving around the neighborhood looking for her and his son. The record shows Hoover and Antill lived together, had previous domestic arguments and the police had been summoned because of a domestic argument. Deputy Moon testified that, as they headed to Hoover's house to see if Antill needed a ride, they noticed him leaving the area. Given the close relationship between Hoover and Antill and considering the totality of the circumstances, we find the officers had a reasonable articulable suspicion that Antill was drunk and driving.

Antill's assignment of error is not well taken and is overruled.

*Judgment affirmed.*

PETER B. ABELE and STEPHENSON, JJ., concur.