**The STATE of Ohio,**

v.

**SHEEHAN.**

Hamilton County Municipal Court.

No. 95TRC10461A, B.

Decided July 28, 1995.

*Kevin O. Donovan,* for the plaintiff.

*Robert H. Lyons,* for Dale Sheehan.

---

KARLA J. GRADY, Judge.

This matter is before the court for decision on defendant's motion to suppress.

The facts of the case are as follows. Shortly after midnight on March 19, 1995, an anonymous call was received by Cincinnati Police Officer Ken Hamilton at District 5. Officer Hamilton testified that the anonymous caller told him that a person was driving erratically and was pulling into the White Castle lot. The caller gave him the license plate number of the car.

Officer Hamilton testified that he did not receive any other information about the car or its driver. He stated he did not know the name of the caller, the address of the caller, the age of the caller, the phone number of the caller, or the caller's reputation for honesty or reliability. Officer Hamilton put out a radio broadcast "that an auto that possibly was a DUI was pulling into a White Castle's lot." He also put out the license plate number of that car. Cincinnati Police Officer Howard Fox, who was working an off-duty detail at White Castle, and Cincinnati Police Officer Vinnie Edwards, who was on routine patrol, each testified that they heard the broadcast. Police Officer Fox testified that "I got a radio call that there was a person who was DUI that had pulled into the White Castle lot over the radio. I jotted down the license number, the make of the vehicle and the color of the vehicle, and I went around to investigate inside the lot. I came upon Mr. Sheehan driving in fact that vehicle with the same license number."

Officer Fox testified that when he went up to the defendant's vehicle, it was in the drive-through line and he asked the defendant to pull over to a parking space on the side.

There is no evidence that Police Officer Fox smelled any odor of alcohol or saw any redness of defendant's eyes on this initial contact with the defendant at his vehicle. Once the defendant pulled out of line and into a parking space on the side of White Castle, Officer Fox again approached him and asked him whether he had been drinking. The defendant stated he had been to a function and maybe had a drink. It was at this point that Officer Fox smelled an odor of alcohol and made an observation about the defendant's eyes. Officer Fox testified, "[A]t that point he—I did smell the odor of alcohol, the presence of alcohol. When I looked at him his eyes appeared to be a little red at * * * at that point." After this conversation, Officer Fox told the defendant to get out of his car, and field sobriety tests were administered to him. The defendant passed the finger-to-nose test. He failed the ABC test and he swayed on the heel-to-toe test. The defendant was placed under arrest by Officer Edwards, who had arrived on the scene during the tests.

Officer Edwards handcuffed the defendant and took him to District 5 for an intoxilyzer test at approximately 12:40 a.m. Officer Edwards testified that she was with the defendant from the above time of arrest until 1:17 a.m., which is when the intoxilyzer test was administered by senior operator Police Officer Ken Hamilton.

Officer Hamilton came into contact with the defendant at 1:00 a.m. when he was brought into District 5's intoxilyzer room for his test and interview. At this point, the defendant was unhandcuffed by Officer Hamilton in the presence of Officer Edwards. Officer Edwards testified that for a period of approximately thirty-seven minutes, she did not observe the defendant ingest anything by way of his mouth. The defendant then took the intoxilyzer and tested .138. Officer Hamilton then interviewed the defendant. He ascertained through his questioning that the defendant was wearing false teeth. Officer Hamilton testified that he told the defendant that just by talking to him, he would not think he was intoxicated.

The issue before the court is, Does an anonymous telephone call without any corroborating information give an officer a specific and articulable basis to make an investigatory stop that is reasonable under the totality of the circumstances?

A police stop of a motor vehicle is a significant intrusion requiring justification as a "seizure" within the meaning of the Fourth and Fourteenth Amendments to the United States Constitution. *State v. Heinrichs* (1988), 46 Ohio App.3d 63, 545 N.E.2d 1304. Less than probable cause for an arrest is

needed to make an investigative stop, but, at a minimum, the stopping officer must possess specific and articulable facts indicating that the stop meets an objective test of reasonableness. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906.

In evaluating these facts, however, the court must look to the totality of the facts and circumstances to determine whether the stop was reasonable. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044.

Thus, in the case at bar, we must look at the facts and circumstances known to Officer Fox and determine whether he objectively had specific and articulable facts sufficient to give rise to a reasonable suspicion that criminal activity was afoot. The facts the officer relies upon to form a reasonable suspicion may be supplied by others, as well as from the officer's personal observation. *Adams v. Williams* (1972), 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–1924, 32 L.Ed.2d 612, 617.

In this case, Officer Fox made the stop of the defendant at the drive-through window based upon information received over the radio from Officer Hamilton, who had received the information by way of an anonymous telephone call. In determining the reasonableness of Officer Fox's actions, we must look at the information received by Officer Hamilton from the anonymous tipster.

Officer Hamilton testified that the information he received was an anonymous call from an adult who stated that a vehicle which was driving erratically was pulling into the White Castle lot, and, additionally, he was given a license plate number. He also was told the caller thought the driver might be DUI. At this point in time, the telephone call was an uncorroborated anonymous tip. See *State v. Campbell* (1990), 68 Ohio App.3d 688, 589 N.E.2d 452; *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301. A tip which, standing alone, would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigation stop if it is sufficiently corroborated through independent police work. *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP–1298 and 89AP–1299, unreported, 1990 WL 135867.

The question is whether this tip was corroborated at any time with sufficient indicia of reliability to justify the investigatory stop by Officer Fox. In most DUI cases, the sufficiency of the tip is not the issue. This is because the tip initially alerts the police officer that a suspected drunk driver exists, and it is the police officer's own subsequent observations which justify the stop of the suspected drunk driver. Mark P. Painter & James M. Looker, Ohio Driving Under the Influence Law (3 Ed.1994), at 141.

■ In this case, Officer Fox did not observe any driving by the defendant. In fact, the record does not contain any evidence that Officer Fox noticed anything remarkable about the driver upon his first contact with him at the drive-through window. Further, a review of the record reveals that Officer Fox did not smell an odor of alcohol or observe any redness in defendant's eyes until his second contact with the defendant after he had instructed him to pull out of the drive-through line and park his vehicle on the side of the White Castle in a parking space.

After the defendant complied with his request to pull out of the drive-through line, Officer Fox again went up to the driver and asked him if he had been drinking. Officer Fox testified that at this time, after the stop had been previously made, the defendant said he had a drink and at that point he smelled an odor of alcohol, the presence of alcohol. Officer Fox also stated that it was at that point that defendant's eyes appeared to be a little red. The officer also testified he made no notations about defendant's speech at the time.

Since we do not have any observation by Officer Fox of any traffic violation, impaired driving, notice of a smell of alcohol, or bloodshot eyes at his first contact with the driver, we must carefully look at the sufficiency of the anonymous tip. See *Alabama v. White, supra.*

In *State v. Oney* (Feb. 15, 1995), Hamilton App. Nos. C–940332 and C–940333, unreported, 1995 WL 59695, the investigatory stop by a police officer who had information from restaurant employees that Oney had just departed from a pick-up window and pulled into a parking space with the motor running, that he was intoxicated, disorderly, verbally abusive, and smelled of alcohol was held to be based on articulable facts justifying a reasonable suspicion that Oney was intoxicated or otherwise impaired and, therefore, the investigatory stop was upheld. In *State v. Antill* (1993), 91 Ohio App.3d 589, 632 N.E.2d 1370, the citizen tipster and Antill lived together; the tipster told the police that Antill was highly intoxicated and was driving around looking for her. In addition, she described his car and gave them his license plate number. The police pulled his car over, Antill got out, staggered, and smelled strongly of alcohol. The court found the close relationship between the defendant and the informant (husband and wife) and a consideration of the totality of the circumstances gave sufficient grounds to justify the investigatory stop.

In *Campbell, supra,* the tip gave not only a description of the vehicle and a description of the driver, but the tipster also said the driver was consuming a bottle of wine. In spite of these corroborating facts, which are more substantial than in the present case, the Hamilton County Court of Appeals ruled that the police lacked reasonable and articulable grounds to justify a stop. In *Campbell,* the court further held that once the defendant claimed he was detained without a

warrant and the police officer lacked reasonable and articulate grounds to believe he was engaged in criminal conduct, the burden of proof shifted to the state to establish a factual basis for the trial court to determine the source's veracity, reliability, and the basis of knowledge, citing *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. In the present case, it is impossible for this court to form any opinion regarding the veracity, reliability, and basis of knowledge of the tipster, as there is no evidence in the record other than that the tip was an anonymous one.

The present case is distinguished from *Oney* and *Antill* in that all the police have is an anonymous call from an adult voice that sounded like a female. They do not have a name, address, telephone number or any other information that could establish credibility or reliability of the anonymous person on the telephone. They are given a license plate number and a location of the vehicle with the additional information that the vehicle is driving "erratically." The driver is not described, the driving other than the word "erratic" is not described, there is no mention of consumption of alcohol, nor is there any information that the driver is engaged in any criminal activity whatsoever. The facts of this case are similar to those found in *State v. Ramsey, supra*. In *Ramsey*, the Franklin County Court of Appeals held that even though the citizen tipster described the suspect's vehicle and left the tipster's name and phone number, the constitutionally required indicia of reliability still were absent.

Applying the totality of the circumstances, this court finds that the state has not established that the initial detention of the defendant was justified as an investigatory stop because Officer Fox lacked the requisite "reasonable articulable suspicion" of criminal activity based on the information he received from the anonymous tip via Officer Hamilton's radio broadcast. Consequently, the defendant's motion to suppress is granted and all evidence, statements, tests, and observations following the intrusion are suppressed.

*So ordered.*