The STATE of Ohio, Appellee,

v.

SMITH et al., Appellants.

The STATE of Ohio, Appellee,

v.

SMITH, Appellant.*

[Cite as *State v. Smith* (1996), 117 Ohio App.3d 278.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–950847 and C–960125.

Decided Dec. 18, 1996.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Christian J. Schaefer,* Assistant Prosecuting Attorney, for appellee.

*Timothy R. Cutcher,* for appellants.

---

MARIANNA BROWN BETTMAN, Presiding Judge.

In one of the underlying cases, case No. B–9503586, appellants Sylvester Smith and Benjamin Taylor were both indicted for carrying a concealed weapon in

contravention of R.C. 2923.12. As a result of the same incident, in the other underlying case, case No. C–95TRD–15866A, Smith was charged with operating a motor vehicle without a license pursuant to R.C. 4507.02.[1] Appellants filed motions to suppress in case No. B–9503586, which the trial court overruled. Subsequently, in case No. C–95TRD–15866A, Smith filed a motion to suppress, and the trial court overruled it based on the res judicata effect of the rulings in case No. B–9503586. Thereafter, Smith and Taylor pleaded no contest to all of the charges. The respective trial courts entered findings of guilty and sentenced Smith and Taylor as it appears of record. The sole assignment of error raised by Smith and Taylor in these consolidated appeals is whether the trial court erred in overruling their motions to suppress.[2] Particularly, they argue that a police broadcast presented no "probable cause" to justify the stop and subsequent search of the automobile in which they were traveling.[3]

On April 17, 1995, at approximately 4:40 p.m., Lockland Police Officer Todd J. Ober ("Ober") received an all-county police radio broadcast concerning an automobile being operated in a reckless manner on southbound Interstate 75. The broadcast, which originated from a motorist on the highway, described a burgundy-colored 1995 Lincoln Town Car bearing South Carolina license plates and occupied by three African–American men, one of whom was wearing a red bandanna. The broadcast further stated that the vehicle was observed weaving in and out of traffic at a high rate of speed. In response, Ober drove to an entrance to the interstate to attempt to locate the car, and upon seeing a vehicle matching the broadcast description, he followed it a short distance.

Ober testified that initially he did not observe the driver, Sylvester Smith, commit any traffic violations, but that once he pulled behind the car, he observed

---

1. Although the record is not before us, appellants state in their brief that Smith was also charged in a companion case, No. C–95TRD–14866B, with a violation of R.C. 4511.33, providing rules for driving in marked lanes; that charge, we are told, was subsequently dismissed following a no-contest plea to the charge of driving without a license. An officer testified at the hearing that he had cited Smith for weaving in his lane of traffic.

2. We have sua sponte removed this case from the accelerated calendar.

3. In his oral argument before the trial court, counsel for Smith and Taylor asserted that he had made the state aware that he was challenging the validity of the search and "the investigatory nature of the action taken by the officers." In closing he stated that he was "challenging the original stop." The trial court determined, in what it defined as "the primary issue," that the stop was valid. It further determined that the smell of marijuana permitted the police to proceed. In their appellate brief, Smith and Taylor contend that the investigatory stop was invalid and "anything subsequent constituted an illegal seizure." They also contend that even were the initial stop valid, the continued detention was not based on a reasonable and articulable suspicion. Thus, for purposes of our analysis, based upon the content of the briefs, we will address only the investigatory stop and, if necessary, the subsequent detention.

the car slowly "weaving" within its lane.[4]   After observing this for approximately fifty to one hundred feet, Ober activated his emergency lights, and the car eventually pulled off the road.   Three other officers joined Ober.   The resulting investigation and search of the car led to the charge against Smith for driving a car without a license and the charges against both Smith and Taylor for carrying a concealed weapon.

The United States Supreme Court in *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, held that the determination of whether a police officer had a reasonable, articulable suspicion to make an investigatory stop requires a two-step analysis: (1) a determination of the historical facts leading up to the stop, reviewing the trial court's findings of historical fact only for clear error and giving "due weight" to "inferences drawn from those facts by resident judges and local law enforcement officers," *id.* at 699, 116 S.Ct. at 1663, 134 L.Ed.2d at 920;   and (2) a determination of whether the "historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Id.* at 696, 116 S.Ct. at 1661–1662, 134 L.Ed.2d at 919.

In determining the propriety of the police officers' conduct, we must first address whether the initial stop by Ober was warranted.   If it was not, we need not continue our analysis.

A police officer, without probable cause to stop and briefly detain a person, may do so if the officer has reasonable suspicion based upon specific articulable facts that the suspect is engaged in criminal activity.   *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1272–1273.   Reasonable suspicion must be based on the totality of the circumstances, *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, paragraph one of the syllabus, and "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Andrews*, at 87–88, 565 N.E.2d at 1273.[5]   Once the

---

4.  R.C. 4511.33 provides:
   "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, * * * the following rules apply:
   "(A) A vehicle * * * shall be driven, as nearly as practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
   Ober testified that he did not observe the car weave outside the white line defining the lane, nor did he see the car change lanes.   Therefore, Ober did not observe any violation of this statute.

5.  "Reasonable suspicion," not "probable cause," is required to make an investigatory stop.   "Reasonable suspicion" has been defined as "a particularized and objective basis" for

defendant has raised the issue, the burden shifts to the state to prove that the stop was supported by reasonable suspicion. See *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus; *State v. Goodrich* (1996), 114 Ohio App.3d 645, 683 N.E.2d 855.

■ Under the totality of the circumstances of this case, where the anonymous tip was not sufficiently corroborated and Ober did not observe any suspicious behavior, we conclude that Ober lacked the necessary reasonable suspicion to justify the investigatory stop.

In *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, the United States Supreme Court held that an anonymous tip, if corroborated, may exhibit sufficient indicia of reliability to justify the investigatory stop of a car.[6] *Id.* at 332, 110 S.Ct. at 2417, 110 L.Ed.2d at 310. The holding is a clarification of a statement made in *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612, that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Id.* at 147, 92 S.Ct. at 1924, 32 L.Ed.2d at 617–618.

■ In this case we have an anonymous tip of a minor traffic violation which required further investigation.[7] The resulting investigation did not reveal any suspicious behavior, although the officer did locate a car similar to the one described by the anonymous tipster. The record does not indicate that Ober observed any erratic driving. "[T]he simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop." *State v. Ramsey* (Sept. 20, 1990), Franklin App. Nos. 89AP–1298 and 89AP–1299, unreported, at 2, 1990 WL 135867. Compare *State v. Leonhardt* (Sept. 25, 1996),

suspecting a detainee of criminal activity. *United States v. Cortez* (1981), 449 U.S. 411, 417–418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629. "Probable cause" exists where "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States, supra,* 517 U.S. at 696, 116 S.Ct. at 1661, 134 L.Ed.2d at 918.

6. The court emphasized that the holding was very fact-specific and the anonymous tip was found to be trustworthy and reliable based mainly upon the correct prediction of the suspect's future behavior.

7. The fact that the anonymous tip was broadcast over the police radio system does not automatically make it reliable. A police broadcast alone may be sufficient to support reasonable suspicion for an investigative stop or probable cause for arrest only where the broadcast is issued in reliance upon an officer who has the requisite knowledge to justify the stop or arrest. See *United States v. Hensley* (1985), 469 U.S. 221, 230–232, 105 S.Ct. 675, 682, 83 L.Ed.2d 604, 613–615; *State v. Holmes* (1985), 28 Ohio App.3d 12, 28 OBR 21, 501 N.E.2d 629.

Hamilton App. Nos. C–950193, C–950194, C–950258, and C–950259, 1996 WL 539787 (denial of motion to suppress affirmed where anonymous tip was sufficiently corroborated by deputy's independent observations). The totality of the circumstances in this case indicate that Ober did not have specific, articulable facts which reasonably warranted the intrusion. *State v. Halahan* (1995), 108 Ohio App.3d 33, 669 N.E.2d 883; *State v. Campbell* (1990), 68 Ohio App.3d 688, 589 N.E.2d 452; *Goodrich, supra; Kirtland v. Grunz* (Sept. 22, 1995), Lake App. Nos. 95–L–009 and 95–L–010, unreported; *State v. Spikes* (June 9, 1995), Lake App. No. 94–L–187, unreported, 1995 WL 407357; *State v. Sheehan* (1995), 72 Ohio Misc.2d 58, 656 N.E.2d 746.

Additionally, since Ober did not observe reckless driving or unlawful weaving, the holding in *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, cited in the dissent, that a pretextual stop of a vehicle is not unreasonable if the police officer has probable cause that a traffic offense has occurred or is occurring, in our view, does not apply.

Therefore, the judgments of the trial courts are reversed, and the cause is remanded for further proceedings in accordance with law.

*Judgment accordingly.*

Doan, J., concurs.

Hildebrandt, J., dissents.

Hildebrandt, Judge, dissenting.

I respectfully disagree with my colleagues and conclude that under the totality of the circumstances Officer Ober was justified in making an investigatory stop of the vehicle in which Smith and Taylor were driver and passenger, respectively. Obviously, a violation of a traffic law may justify the stopping of a vehicle. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States* (1996), 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89, 95. Depending on the totality of the circumstances, weaving within one's lane may be sufficient evidence to overcome the presumption of the unreasonableness of an investigatory stop. See *State v. Gedeon* (1992), 81 Ohio App.3d 617, 611 N.E.2d 972.[8] In fact, even if the alleged violation commonly occurs so that police may

---

8. In fact, the Ohio Supreme Court has recently held that a stop of a vehicle based on probable cause that a traffic violation has occurred or was occurring is not unreasonable under the Fourth Amendment to the United States Constitution even if the police officer had some

"single out almost whomever they wish for a stop," the United States Supreme Court has refused to conclude that the infraction cannot give rise to a valid detention. See *Whren, supra,* at 818, 116 S.Ct. at 1777, 135 L.Ed.2d at 101.

Furthermore, a police radio broadcast is a presumptively trustworthy source, see *State v. Fultz* (1968), 13 Ohio St.2d 79, 42 O.O.2d 259, 234 N.E.2d 593, and may provide reasonable suspicion of criminal activity, even if anonymous. *State v. Franklin* (1993), 86 Ohio App.3d 101, 104, 619 N.E.2d 1182, 1184.

In the instant case Officer Ober made an investigatory stop based on a radio broadcast providing a motorist's particularized description of a vehicle, its erratic driving, its location, its direction and its occupants. He observed the described vehicle weaving within its lane of travel. I believe that the combination of the broadcast and Officer Ober's observations was sufficient to justify the investigative stop. See *Alabama v. White* (1990), 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301; *State v. Franklin, supra; State v. Leonhardt* (Sept. 25, 1996), Hamilton App. Nos. C–950193, C–950194, C–950258 and C–950259, unreported, 1996 WL 539787 (where officer's corroboration did not include observation of erratic driving, but only particulars of the vehicle, license number, and driver).

Because I conclude that the investigatory stop was justified, my analysis must include an examination of the "continued" detention of Smith and Taylor to determine whether it constituted an illegal seizure. Officer Watts, a Lockland drug interdiction officer, testified that he covered Officer Ober from the right rear corner of the vehicle while Officer Ober requested proof of identification from its occupants. When Officer Ober stepped away from the vehicle, another officer, Officer Torbert, approached it.[9] Officer Watts pointed to his nose to indicate he smelled an odor of burnt marijuana coming from inside the car. Officer Watts testified that as part of his job, he smelled marijuana "all the time."

Officer Torbert asked Smith if anyone had been smoking marijuana, to which Smith responded that "they" had been smoking. Officer Torbert asked Smith to step from the vehicle and Officer Watts patted him down. Officer Watts asked if there was anything in the vehicle of which the police should be aware, such as drugs, money or weapons. Smith told the police that he had a nine-millimeter gun someplace in the vehicle. Officer Watts asked Taylor to get out of the vehicle and patted him down. Meanwhile, Officer Torbert removed a .25–caliber weapon from a book bag in the back seat next to where Taylor had been sitting. Officer Watts, upon securing Taylor, went back to the vehicle where Taylor had

---

ulterior motive for making the stop. *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus. Accord *Whren v. United States, supra.*

9. Officers Watts and Torbert were present as a result of Officer Ober's call to the dispatcher, made upon the Lincoln's initial failure to stop when Officer Ober activated his lights.

been sitting and, in the left-hand pocket of a jacket, found a loaded magazine for the .25–caliber weapon. The officers removed Ako from the car, performed a patdown, and detained him. The officers continued to search the car for other weapons, and Officer Ober discovered the nine-millimeter, semiautomatic weapon to which Smith had referred in a large camera bag in the back seat. Officer Watts testified that the police officers then asked if there was anything else they should be aware of in the vehicle, to which they received a negative response. They then asked for and received consent to search the trunk, where they found $900 in currency in Taylor's suitcase.

According to Officer Ober, the police officers also impounded the vehicle, called a tow truck, and performed a further search pursuant to the impoundment. Officer Ober further testified that there was a strong odor of marijuana in the vehicle while they searched it, and that the police officers thought there might be drugs.[10] They searched through suitcases in the trunk because of the weapons and to determine whether there was contraband.

It is without question that a police officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped. The scope and duration of such stop, however, is limited to "effectuate the purpose for which the initial stop was made." *State v. Venham* (1994), 96 Ohio App.3d 649, 655, 645 N.E.2d 831, 834, citing *United States v. Brignoni–Ponce* (1975), 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607; *State v. Chatton* (1984), 11 Ohio St.3d 59, 63, 11 OBR 250, 253–254, 463 N.E.2d 1237, 1240–1241; *State v. Bevan* (1992), 80 Ohio App.3d 126, 129, 608 N.E.2d 1099, 1101. Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 562 N.E.2d 932. During that time, an officer may run a computer check on a driver's license or license plates. See *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. It is only when additional facts are encountered that give rise to a reasonable, articulable suspicion beyond that which prompted the initial stop that a police officer may continue the detention, and that detention may continue so long as the new suspicion exists, even if the suspicion that justified the initial stop has ceased. *State v. Myers* (1990), 63 Ohio App.3d 765, 771, 580 N.E.2d 61, 64; *State v. Venham, supra.*

In this case, Smith and Taylor were being lawfully detained for the traffic offense when Officer Watts noticed the smell of marijuana and Officer Torbert asked Smith whether they had been smoking. At that time Officer Ober was still

---

10. A "drug dog" brought to the scene later did not detect any drugs in the vehicle. The subsequent search did not reveal any burnt marijuana in the vehicle.

**286**

determining the validity of the licenses and the registration of the vehicle. The smell of marijuana and Smith's response to the investigation of that smell created, during the lawful initial stop, additional facts to support a reasonable, articulable suspicion of separate illegal activity.[11] Thus, because the initial stop was justified and the continued detention of Smith and Taylor was lawful, I would affirm the trial courts' judgments.

---

11. I note that other courts have determined that the odor of marijuana, in conjunction with other evidence, see State v. VanScoder (1994), 92 Ohio App.3d 853, 637 N.E.2d 374; State v. Caldwell (Nov. 27, 1995), Warren App. No. CA95–05–046, unreported, 1995 WL 695055; State v. Crowell (June 30, 1995), Williams App. No. WM–95–001, unreported, 1995 WL 386486, or standing alone, see State v. Garcia (1986), 32 Ohio App.3d 38, 513 N.E.2d 1350; In the Matter of Coleman (Dec. 30, 1993), Cuyahoga App. No. 65459, unreported, 1993 WL 541582; State v. Bird (Dec. 31, 1992), Washington App. No. 92CA2, unreported, 1992 WL 396844, may constitute "probable cause," an even higher standard than reasonable suspicion. But, see, State v. Younts (1993), 92 Ohio App.3d 708, 637 N.E.2d 64.