OPINION
This timely appeal arises from a jury verdict in Mahoning County Common Pleas Court finding appellant guilty of aggravated murder, aggravated burglary and aggravated robbery. For the following reasons, we affirm the jury verdict and judgment of the trial court.
On October 20, 1993, Rose Bertolini arrived at her home at 110 South Beverly Avenue, Austintown, Ohio, and found Timothy Gessner, Scott Camuso and Appellant, David Dattilo, (hereinafter collectively referred to as "defendants"), burglarizing her home. All of the defendants were seventeen (17) years of age at the time. Camuso beat Mrs. Bertolini with a baseball bat, causing fatal injuries. The defendants took numerous items from the home and left the scene in Mrs. Bertolini's car. Henry Bertolini found his wife a short time later.
While police were investigating the scene, Steve Cambert and Chris Johnson informed police of an encounter they had with the defendants the night before Mrs. Bertolini's death. They told police that the defendants referred to plans to burglarize a house and that one of the defendants said, "* * * we'll kill the bitch if we have to." (Voluntary statement of Chris Johnson.) Later that evening, the Austintown Police Department received an anonymous telephone call advising them that if they discovered a burglary or homicide in Austintown, the suspects were at a local truck stop preparing to leave town. Police later arrested and read the Miranda rights to the defendants at the truck stop.
Police transported the defendants to the Austintown Police Department for questioning. An officer read a waiver of rights form to Appellant but Appellant was not certain that he should sign the form. The officer marked "refused" on the form. A detective then attempted to contact Appellant's parents. The detective contacted Appellant's father at 11:00 p.m. but he did not arrive at the department until 1:25 a.m. on October 21, 1993. Prior to the arrival of Appellant's father, a detective again advised Appellant of his rights in detail and again reviewed a waiver form. Appellant signed the waiver and gave a statement admitting his involvement in the planning and commission of the crime. He admitted to being in the Bertolini home between thirty and forty-five minutes. He also admitted that the night before the crime, the defendants discussed attacking anyone who discovered them in the home.
On February 18, 1994, the Mahoning County Grand Jury indicted Appellant on one count of aggravated murder in violation of R.C. § 2903.01 (B) (C), one count of aggravated burglary in violation of R.C. § 2911.11 (A) (3) (B) and one count of aggravated robbery in violation of R.C. § 2911.01 (A) (2) (B). On April 11, 1994, Appellant filed a motion for change of venue. The trial court responded that a ruling on the motion would follow voir dire. On May 27, 1994, Appellant filed a motion to suppress his statement given to the Austintown police department. The trial court conducted an evidentiary hearing and overruled the motion to suppress.
Initially, Appellant entered a guilty plea to aggravated murder, aggravated burglary and aggravated robbery. However, Appellant later filed a motion to withdraw his guilty plea. On August 29, 1994, the grand jury issued a superseding indictment adding one charge of aggravated murder in violation of R.C. § 2903.01 (A) (C) and one count of escape in violation of R.C. § 2921.34 (A) (C) (2) (a). The trial court granted Appellant's motion to withdraw his guilty plea on August 30, 1994.
Following voir dire, which commenced on November 29, 1994, the trial court overruled Appellant's motion for change of venue. Trial began on December 9, 1994, and on December 22, 1994, the jury found Appellant guilty of aggravated murder, aggravated burglary and aggravated robbery. The trial court found that the two counts of murder merged and dismissed the charge of aggravated murder in violation of R.C. § 2903.01 (A)(C) Two weeks later, Appellant pled guilty to the escape charge and on January 10, 1995, Appellant was sentenced to life imprisonment with parole eligibility after twenty years on the remaining aggravated murder charge, seven to twenty-five years for aggravated burglary to be served consecutively with the sentence for aggravated murder and seven to twenty five years for aggravated robbery to be served concurrently with the sentences for aggravated murder and aggravated burglary. Appellant received an additional five to twenty five years for escape to be served consecutively to the aggravated murder and aggravated burglary sentences.
Appellant filed his Notice of Appeal on January 5, 1995. Pursuant to App.R. 4 (C), we will treat Appellant's appeal as having been filed immediately after the filing of the judgment entry imposing sentence. Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR A CHANGE OF VENUE, THUS DEPRIVING APPELLANT OF A FAIR TRIAL GUARANTEED BY U.S. CONST. AMEND. VI AND XIV AND OHIO CONST. ART. I. §§ 1, 2, 3, 10, AND 16."
Appellant charges that the trial court should have granted his motion for a change of venue. He claims that the local media had saturated the community with publicity which prevented him from receiving a fair trial. Appellant states that the publicity included reports of the murder, the apprehension of Appellant and his co-defendants, various pretrial proceedings and the plea agreements of the co-defendants.
Appellant argues that it was clear that members of the jury had been exposed to pretrial publicity. According to Appellant, several jurors admitted to having some knowledge of the case or to having heard about some elements of the case through the media. In addition, Appellant argues that the jurors dismissed for cause or through peremptory challenge serve as evidence of the media coverage of Appellant's trial.
Appellant contends that if there exists a "reasonable likelihood" that, prior to trial, news coverage will prejudice the proceedings and prevent a fair trial, the judge should transfer the matter to a neutral venue and where this prejudicial news coverage occurs during the proceedings and, "* * * threatens the fairness of the trial, a new trial should be ordered."Sheppard v. Maxwell (1966), 384 U.S. 333. Appellant argues that where there is extensive press coverage prior to trial, it is not necessary to show identifiable prejudice in a motion for change of venue. State v. Fairbanks (1972), 32 Ohio St.2d 34. Appellant also argues that there can be no assumption that jurors can disregard pretrial publicity. Forsythe v. State (1967), 12 Ohio Misc. 99. For the reasons which follow, Appellant's assignment of error on this issue must fail.
Crim.R. 18 (B) provides:
 "Upon the motion of any party or upon its own motion the court may transfer an action to any court having jurisdiction of the subject matter outside the county in which trial would otherwise be held, when it appears that a fair and impartial trial cannot be held in the court in which the action is pending."
When reviewing a decision denying a change of venue the appellate court is guided by, "* * * established principles that the decision on changing venue rests largely in the discretion of the trial court." State v. Gumm (1995), 73 Ohio St.3d 413,431. An appellate court will not reverse the trial court's decision without a clear showing that the trial court abused its discretion. Id. Abuse of discretion, "* * * connoted more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude * * * " State v. Maurer
(1984), 15 Ohio St.3d 239, 250, quoting Steiner v. Custer
(1940), 137 Ohio St. 448, paragraph two of the syllabus.
Before granting a change of venue, the trial court should first make a "good faith" attempt to seat a jury. State v.Cumm, 430. Although it is permissible for a trial court to hold a separate hearing on venue prior to seating a jury, the court is not required to do so. Id. Ohio recognizes that the best test as to whether prejudice exists in the community is the examination of jurors on voir dire. Id.
There is no requirement that the jurors be completely ignorant of the circumstances surrounding the case. State v.Thompson (1987), 33 Ohio St.3d 1, 5. Instead, the trial court should look to the totality of the circumstances when determining whether excessive pretrial publicity warrants a change of venue. Id. In making its determination, the trial court should closely scrutinize voir dire and consider whether a juror can lay aside the impressions or opinions formed from pre-trial publicity and render a verdict based on the evidence presented at trial. Id.
In the present case, extensive individual voir dire took place before the trial court denied Appellant's motion for change of venue. The trial court conducted individual voir dire of each prospective juror which focused exclusively on the issue of pretrial publicity. In addition to the prosecutor and defense counsel, the judge himself questioned each potential juror as to their knowledge of Appellant's case based on media coverage. Although several of the seated jurors, as Appellant notes, admitted having some knowledge of the circumstances surrounding the case, the court ascertained that each could disregard any impression or opinion and base his or her decision solely on the evidence presented at trial. Even in the instance of the juror who could be characterized as having the most knowledge of the matter, the court had an ample basis for determining that the juror could be fair and impartial. This juror recalled a framework of facts from the burglary, to the murder, to the arrest of the defendants. Voir dire transcript (hereinafter Tr.) 370-371. However, the court ascertained that the juror had not formed an opinion based on this media coverage. Tr. 354. The juror also confirmed that she could afford Appellant the presumption of innocence and that she could make her decision based solely on the evidence presented at trial. Tr. 355, 362.
Other jurors with some knowledge of the case similarly affirmed their ability to be fair and objective by disregarding pre-trial publicity. One juror stated that he could "absolutely" afford Appellant the presumption of innocence. Tr. 66. Another juror stated her understanding that pretrial publicity was to have no role in determining Appellant's guilt or innocence; she further confirmed that she could make a decision based only on trial evidence. Tr. 223.
In response to this questioning of the jurors, the trial court had an extensive basis from which it could determine that the jury was not influenced by pretrial publicity. Having conducted this extensive individual voir dire, we cannot conclude that the trial court acted in an unreasonable, arbitrary or unconscionable manner in overruling Appellant's motion for change of venue. We therefore hold that Appellant's first assignment of error lacks merit.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT RESULTING IN A VIOLATION OF APPELLANT'S RIGHTS SECURED BY U.S. CONST. AMEND. V, VI, AND XIV."
In addition to the facts outlined herein, Appellant states that during his interrogation by the Austintown police, Detective Richard Kaschak entered the interrogation room, threw some papers on the table and stated that the other suspects were "telling on" Appellant and, "* * * when they flip the switch, [Appellant] will jump as high as the rest of them." Suppression transcript (hereinafter Supp. Tr.), 201. Appellant also states that he signed the waiver of rights form due to police officers' repeated statements that "we'll get started" taking a statement. Appellant asserts that police commenced taking his statement despite the fact that his parents were on their way. Appellant claims that he was scared and thought he was required to make a statement and he argues that the police were well aware that he was "in a state of confusion."
Appellant argues that in Miranda v. Arizona (1966),384 U.S. 436, the United States Supreme Court recognized the psychological pressure that in-custody interrogation may have on an accused, and that in such situations police must adequately and effectively inform the suspect of his rights and that the exercise of those rights must be fully honored. Id., 467. Appellant claims that the police did not honor his exercise of those rights. He argues as to this claim that he told police he would not waive his rights and that this is evidenced by Officer Gartska marking "Refused" on a waiver of rights form. Defense Exhibit 28, Supp. Tr., 198.
According to Appellant, once a suspect waives his rights, the State has the burden to prove that the suspect's waiver was made knowingly and intelligently. Miranda, 475; Tague v.Louisiana (1980), 444 U.S. 469, 471. Appellant claims that his waiver of rights was not made knowingly and voluntarily. Appellant states that he was seventeen years old and had no prior experience in being questioned by police. Appellant also argues that although he refused to waive his rights, the police told him that they would begin taking his statement. Appellant claims that the police never told him that he did not have to make a statement but that certain officers told him to sign the waiver form. Appellant also claims that he was not informed of consequences of the adult criminal justice system. Furthermore, Appellant argues that although the presence of a parent is not required when questioning a juvenile, the absence of a parent is an important consideration when determining whether a juvenile has validly waived his rights. State v. Bobo (1989), 65 Ohio App.3d 685,689-690.
In reviewing a motion to suppress, an appellate court is to determine whether the lower court's findings are supported by competent, credible evidence. State v. Winand (1996), 116 Ohio App.3d 286,288 citing Tallmadge v. McCoy (1994), 96 Ohio App.3d 604,608. The issue of credibility of a witness is left to the trier of fact and we will not second guess the trial court as to credibility issues. State v. Webb (1997), 120 Ohio App.3d 56,58.
When determining whether a juvenile made a valid waiver of his rights in the absence of a parent, a trial court must consider the totality of the circumstances including, "* * * the age, mentality and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." In Re Watson (1989), 47 Ohio St.3d 86,90. This court must defer to the trial court's assignment of the weight and credibility to be given to the evidence presented at the suppression hearing. State v. Moore (1998), 81 Ohio St.3d 22,31.
In the present matter, the record before us includes Appellant's signed waiver of his Miranda rights. Although Appellant admits the existence of this signed waiver, he disputes its validity, claiming that he was compelled to sign it because of suggestions by police which amounted to coercion on their part. In so arguing, Appellant ignores the transcript of his statements to Detective Joseph Giampietro where the detective carefully ascertained Appellant's understanding of his rights during interrogation. Statement, 2. This transcript evidence leaves the strong presumption that the waiver was voluntary. State v. Cooey (1989), 46 Ohio St.3d 20, 27.
In addition, at the suppression hearing the trial court heard testimony regarding the factors to be considered according to In Re Watson, supra. Both Appellant and Detective Giampietro testified concerning Appellant's age; he was seventeen and one-half years old at the time of the murder, Supp. Tr., 72, 210, and thus, he was obviously close to the age of majority. With respect to Appellant's mentality, Giampietro testified that Appellant indicated that he could read and write and that he had no trouble understanding Giampietro's questions. Supp. Tr., 74. Giampietro also testified that Appellant responded coherently to each question. Supp. Tr., 74. Appellant confirmed this, testifying that he was literate and that he understood Giampietro's conversation with him. Supp. Tr., 210. Appellant also indicated that he remained composed during his statement. Supp. Tr., 212.
With respect to Appellant's prior experience with the police, Giampietro testified that he knew that Appellant had prior juvenile status offenses. Supp. Tr., 75. Giampietro testified that the length of the interview was between thirty and thirty-five minutes and that this was the only questioning of Appellant. Supp. Tr., 72, 74. Appellant testified that he was not hand-cuffed when he gave his statement and that he was permitted to use the bathroom and water fountain. Supp. Tr., 199. In addition, Appellant stated that police provided him with a cigarette upon his request. Supp. Tr. 199.
With respect to any alleged threats or inducements, Appellant testified that Detective Kaschak told him that the other suspects were implicating him. Supp. Tr. 201. However, Kaschak testified that he made no such statement to or in the presence of Appellant and, in fact, says he was never in the room in which the other detectives questioned Appellant. Supp. Tr. 128.
Giampietro testified that no threats or promises were made to Appellant. Supp. Tr. 73, 107-109. Giampietro also testified that Appellant stated that he knew his rights and that no one threatened him to compel his waiver of those rights. Supp. Tr. 78. Appellant admits in his testimony that Kaschak, whom Appellant specifically accuses of making coercive statements, was not in the room when he signed his waiver nor when he gave his statement. Supp. Tr. 211. Tellingly, Appellant specifically testified that no one made any threats or promises in exchange for his statement. Supp. Tr. 211.
As the trial court heard testimony regarding the circumstances of the Miranda waiver and subsequent statement, including evidence going to the factors as set forth in In Re Watson,supra, this court must defer to the trial court's finding that Appellant's waiver and statement were voluntary. The totality of the circumstances indicate that there was an adequate basis on which the trial court could have found that Appellant's statement was made voluntarily and intelligently. Thus, the trial court properly overruled Appellant's motion to suppress and we find no merit in this assignment of error.
Appellant's third assignment of error alleges:
 "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, SECURED BY U.S. CONST. AMEND. VI AND XIV AND OHIO CONST. ART. I, §§ 1, 2, 10, AND 16, WHEN HIS COUNSEL FAILED TO FILE A MOTION TO SUPPRESS EVIDENCE BECAUSE APPELLANT'S ARREST WAS WITHOUT PROBABLE CAUSE."
Appellant states that he and his co-defendants were arrested without a warrant after an anonymous caller, later identified as Frank Dimuzio, told police that the suspects were at the truck stop. Appellant contends that the police did not ascertain the reliability of the informant and that the arrest lacked the probable cause required to effectuate a warrantless arrest. Based on the assumption that his arrest was groundless, Appellant complains that he received ineffective assistance of counsel because his trial counsel did not object to the arrest which resulted in Appellant's confession to police.
This assignment of error lacks merit. When deciding whether a criminal defendant received adequate representation, the defendant has the burden of proving ineffective assistance of counsel. State v. Lott (1990), 51 Ohio St.3d 160, 175. To meet this burden of proof the defendant must show, ". . . first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial." Id., 174, citing Strickland v.Washington (1984), U.S. 668, 687. In order to establish that counsel was deficient, Appellant must demonstrate that his counsel's performance fell, "below an objective standard of reasonable representation." State v. Keith (1997), 79 Ohio St.3d 514,534. To demonstrate that he was prejudiced by this poor performance, Appellant faces a "but for" test: that we can see from the record that there exists a reasonable probability that but for the mistakes of counsel, the outcome of Appellant's trial would have been different. Id. In Ohio, a properly licensed attorney is presumed competent. Lott, 175. Moreover, strategic or tactical decisions will not form a basis of an ineffective assistance of counsel claim. State v. Clayton
(1980), 62 Ohio St.2d 45, 48-49.
In the present matter, Appellant offers little support to overcome the presumption that his trial counsel acted properly. Instead, Appellant focusses his argument on his claim that the arrest was improper due to reliance on unreliable, anonymous information. Thus, an analysis of the arrest is essential to the disposition of this assignment of error.
It is well settled that all arrests must be justified by probable cause. United States v. Watson (1976), 423 U.S. 411. [P]robable cause exists where the arresting officer had sufficient information from a reasonably trustworthy source to warrant a prudent person in believing that the suspect has committed or was committing the offense." State v. Otte (1996),74 Ohio St.3d 555, 559. The assessment of probable cause is based on the totality of the circumstances. Illinois v. Gates
(1983), 462 U.S. 213. This is a "practical, nontechnical conception" that deals with probabilities and not certainties. Id., 231.
Based on the record before us, the totality of the circumstances indicate that the arrest was supported by probable cause. We cannot dispute that anonymous information with no indicia of reliability must be corroborated to form the basis of reasonable suspicion. State v. Smith (1996), 117 Ohio App.3d 278,282, citing Alabama v. White (1990), 496 U.S. 325, 332. Here, the informant told police that if there was a homicide or burglary in Austintown, the suspects were at the truck stop trying to find a way out of town. Supp. Tr. 122. It has been held that familiarity with a person's itinerary is suggestive of "inside information" which indicates the reliability of anonymous information. State v. Otte, supra, 560, citingAlabama v. White, supra, 332.
Furthermore, police were informed at the scene of the crime by Steve Cambert and Chris Johnson that Appellant and his co-defendants were planning a burglary which included an attack on anyone who discovered them. Here, the informant's information coupled with the fact that the defendants, independently established as suspects, were found at a truck stop near a major interstate which would allow them an easy route of escape, provided police with sufficiently reliable information that would indicate to a prudent person that Appellant and the co-defendants committed the crime.
As the informant's tip was corroborated by other circumstances, the arrest was proper. Thus, a motion challenging the propriety of the detention and arrest likely would have failed. Appellant cannot then demonstrate any prejudice to his case in trial counsel's failure to challenge the arrest.
Trial counsel's actions here also may be classified as a strategic or tactical decision which is not a basis for an ineffective assistance of counsel claim. State v. Clayton,supra. This is especially true when considering that trial counsel moved to suppress Appellant's confession based on the claim that it was involuntary. It follows that Appellant's trial counsel chose the latter in an attempt to suppress this evidence because this tactic was more likely to succeed.
For the foregoing reasons, we conclude that Appellant's third assignment of error also lacks merit. Based on all of the foregoing, we hereby affirm the judgment and conviction of the trial court.
COX, P.J., concurs.
DONOFRIO, J., concurs.
APPROVED:
 ___________________________________ CHERYL L. WAITE, JUDGE