[This opinion has been published in *Ohio Official Reports* at 80 Ohio St.3d 626.]

THE STATE OF OHIO, APPELLANT, *v.* GIPSON, APPELLEE.

[Cite as *State v. Gipson*, 1998-Ohio-659.]

*Criminal law—Requirement of former R.C. 2925.11(E)(5) and current analogous provisions of R.C. 2929.18(B)(1) that an affidavit of indigency must be "filed" with the court prior to sentencing construed.*

The requirement of former R.C. 2925.11(E)(5) (and the current analogous provisions of R.C. 2929.18[B][1]) that an affidavit of indigency must be "filed" with the court prior to sentencing means that the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the clerk of court, *i.e.*, time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision.

(No 96-1929—Submitted November 5, 1997 at the Cleveland-Marshall College of Law Session—Decided January 7, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 69409.

———————————

{¶ 1} In October 1994, appellee, Nathaniel Gipson, was arrested in Cleveland, Ohio, for possession of two "rocks" of crack cocaine. Following his arrest, Gipson was released on bond. In December 1994, Gipson was indicted by the Cuyahoga County Grand Jury for possession of cocaine (in less than the bulk amount), a drug of abuse, in violation of former R.C. 2925.11 (145 Ohio Laws, Part III, 5781). At his arraignment, Gipson pled not guilty to the charge, was found to be an indigent person, and was assigned a public defender. In March 1995, Gipson retained private counsel. Thereafter, the public defender assigned to represent Gipson withdrew as counsel of record.

{¶ 2} In May 1995, the matter proceeded to trial before a jury. Following the presentation of evidence, the jury returned its verdict finding Gipson guilty of

the charge set forth in the indictment. After discharging the jury, the trial court scheduled sentencing for July 10.

{¶ 3} At the July 10 sentencing hearing, the trial court sentenced Gipson to a term of imprisonment and imposed the $1,500 mandatory fine required by former R.C. 2925.11(E)(1) for the fourth-degree felony appellant had committed. See 145 Ohio Laws, Part III, 5781-5782. However, the trial court suspended execution of that sentence and placed Gipson on probation for a period of four years. The conditions of probation included, among other things, ninety days of electronic home detention and a requirement that Gipson satisfy the mandatory fine through either cash payments or community service. During the hearing, but after the trial court had pronounced sentence, Gipson's attorney informed the court that an affidavit of indigency had been prepared for purposes of avoiding payment of the mandatory fine. See former R.C. 2925.11(E)(1) and (E)(5), 145 Ohio Laws, Part III, 5782. Specifically, defense counsel stated, "I have an affidavit on the fine because he's not working." In response, the trial court instructed defense counsel that counsel could "file the affidavit," but that the affidavit would not affect the sentence imposed by the court. The following are excerpts of the transcript from the July 10 sentencing hearing:

"[THE COURT:] Okay, Mr. Gipson, I'm ready to go ahead at this point * * * to hear what you have to say, what Mr. Mancino [defense counsel] has to say and [to] hear from the prosecutor [Ms. Maleckor] as to what she may have to say on the appropriate sentence. Are you prepared to go ahead at this time? Prepared to go ahead with the sentencing hearing at this time?

"THE DEFENDANT: Yes.

"THE COURT: Okay, Mr. Mancino, do you want to begin?

"MR. MANCINO: Yes, thank you, Your Honor. Well, with respect to the facts, the Court is well aware of the facts. There was a trial in this case. Of course, the factual situation was a hotly contested issue in this case. The jury believed the

2

State's version and he was convicted on this. He's a young man, doesn't have any significant record that I can determine from the presentence report.

"THE COURT: He apparently has a juvenile record for prior drug trafficking, but anyhow, go ahead.

"MR. MANCINO: He does[;] from the information I have he resides there with his mother and he's not employed. He had hopes of employment I think at one time and it still may be available where he may have a job with the city. His father is attempting to get him some work but presently he is not employed although he is looking for work. He does have a small child and they are furnishing support for the young child and the child's mother. To me he doesn't present a threat to society, to himself or to others.

"THE COURT: Mr. Gipson, what would you like to say?

"THE DEFENDANT: Well, I was trying to get a job, be with my son but I don't have the job right now.

"THE COURT: Miss Maleckor, would you like to say anything about this case?

"MS. MALECKOR: Your Honor, I know you heard the facts of this case in detail since it did go to trial so I have nothing to add at this point.

"THE COURT: Well, what can I really say? I've heard the facts. I think you were guilty. There is no question about that. * * * I am willing to give you a chance, but I want to tell you if I give you this chance and you blow it this time * * * then you are going to go to prison, so what I'm going to do is suspend the sentence of one year at the Lorain Correctional Institution. I'm going to impose the statutory penalty of the $1,500 fine together with court costs.

"I'm going to place you on probation for four years. I'm going to require that you do 90 days on electronic home detention which means that you will be able to leave the home for certain purposes allowed by the Court but not just at your

own pleasure.  I'm also going to require that you do the first 90 days as daily reporting where you have a day reporting program * * *.

"You'll have to report every day to the Probation Department.  When you're not doing what the Probation Department tells you to do through the daily reporting effort, you will have to be at home.  That's it.  I expect the fine to be paid by cash or community service at the rate of $200 a month, and I expect you to make those payments.

"MR. MANCINO:  I have an affidavit on the fine because he's not working.

"THE COURT:  But he's not going to be indigent for the rest of his life.  He'll be on probation for four years.  If he can't pay this money over the period of four years, there is something really wrong with him.  He's six foot two, 200 pounds, nineteen years old.  There ought to be a lot of jobs he can handle, so I don't see any reason why he can't pay this.  You can file the affidavit.  I'm not going to stop that but I don't regard that as making him unable to pay a fine over the course of probation.  Are you retained counsel in this case?

"MR. MANCINO:  Yes, I am.

"THE COURT:  Have you been paid?

"MR. MANCINO:  A small amount.

"THE COURT:  If he could come up with the money to hire a lawyer, he ought to know how to come up with the money to pay his fine, and if he doesn't want to do it by cash, he can do it by community service, so I'll accept your affidavit but I don't think it affects the sentence here in any way.  I'm also going to suspend his driver's license for a year.

"MR. MANCINO:  Your Honor, we would object to [the suspension of Gipson's driver's license]. * * *

"THE COURT:  I hear what you're saying.  There is a mandatory law under the statute.  The statute [former R.C. 2925.11(F)(1)] now requires that his driver's license be suspended for a minimum of six months and up to five years.

4

"* * *

"THE COURT: So anyhow that's what I'm going to go [*sic*, do]. I'm also going to require you to be back in court on November 15th at 8:30 in the morning. I expect all these things will be done.

"* * *

"THE COURT: Court costs must be paid by the end of probation. Now look, let me ask you to do this, Mr. Mancino. You know me, you've been in my court a number of times. Your client is getting a break. I think you would not disagree with that.

"MR. MANCINO: I agree with you.

"THE COURT: This is probably one of the few courtrooms where he wouldn't go to prison after this trial, but I don't think prison is necessarily justified in this case * * *. * * * I am prepared to accept the statement that he probably has a potential to be a decent person but I've extended that opportunity to him. * * * [I]f you play around with this thing and take advantage of this opportunity, then you're going to prison."

{¶ 4} Gipson's sentence and the terms of his probation were set forth in a journal entry dated July 10, 1995. The journal entry was subsequently filed with the clerk of court on July 18. On July 26, Gipson filed a motion to abate the mandatory fine imposed by the trial court. Attached to the motion was the affidavit of indigency that had been signed by Gipson on July 10, *i.e.*, the date of the sentencing hearing. In the affidavit, Gipson alleged, "I am indigent and unable to pay any mandatory fine pursuant to R.C. §2925.03(L) [*sic*, former R.C. 2925.11(E)(1) and (5)]. Affiant is unemployed, owns no property or bank accounts."[1] The trial court never ruled on the motion to abate the mandatory fine.

---

1. The reference in the affidavit to former R.C. 2925.03(L) was in error, since that statute pertained to, among other things, the procedure for avoiding mandatory fines for *drug trafficking offenses*, *i.e.*, violations of former R.C. 2925.*03*, on the basis of indigency and inability to pay. See 145 Ohio

Specifically, while the motion was pending before the trial court, Gipson appealed his conviction and sentence to the court of appeals.

{¶ 5} On appeal, the court of appeals, in a split decision, reversed that portion of the trial court's judgment which had imposed the mandatory fine and had required, as a condition of probation, that Gipson satisfy the fine through monthly cash payments or community service. The court of appeals' majority stated that "[a]t the time of sentencing, defendant was unemployed and his affidavit of indigency prior to sentencing was unopposed." On this basis, the court of appeals' majority concluded that "the trial court abused its discretion in imposing the fine *in futuro* given defendant's indigency." The court of appeals affirmed the judgment of the trial court in all other respects.

{¶ 6} Judge Patton of the court of appeals, in a concurring and dissenting opinion, joined the court of appeals' majority in affirming Gipson's conviction, but dissented from the majority's decision regarding the mandatory fine. Judge Patton stated, "I find the trial judge did not abuse his discretion by imposing the mandatory fine since he could reasonably find the defendant did not timely file his affidavit of indigency and further could find the totality of the circumstances weighed in favor of rejecting defendant's affidavit of indigency and imposing the mandatory fine."

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal.

——————————

Laws, Part III, 5771-5780. The reference to former R.C. 2925.03(L) is also found in the court of appeals' majority opinion, Judge Patton's dissenting opinion, and the state's brief in this court. In point of fact, Gipson was neither charged with nor convicted of a drug trafficking offense. Rather, Gipson was charged with and convicted of a drug abuse offense in violation of former R.C. 2925.*11*. (145 Ohio Laws, Part III, 5781.) Although former R.C. 2925.11(E)(5) (145 Ohio Laws, Part III, 5782) was substantially similar to former R.C. 2925.03(L), R.C. 2925.11(E)(5) pertained to, among other things, the procedure for avoiding imposition of mandatory fines for violations of R.C. 2925.*11*.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, *Arthur A. Elkins* and *George J. Sadd*, Assistant Prosecuting Attorneys, for appellant.

*Paul Mancino, Jr.*, for appellee.

_____

**DOUGLAS, J.**

{¶ 8} The sole issue in this appeal may be phrased in terms of the following question: Did the trial court abuse its discretion and/or commit an error of law by imposing the mandatory fine and by requiring Gipson to satisfy that fine over the course of his probation? For the reasons that follow, we answer that question in the negative. Therefore, we reverse the judgment of the court of appeals on the issue before us and reinstate the judgment of the trial court in its entirety.

{¶ 9} Statutes throughout R.C. Chapter 2925 provide for the imposition of mandatory fines for certain drug-related offenses, including certain drug abuse offenses in violation of R.C. 2925.11, and refer to a specific statutory procedure by which an offender who is both indigent and unable to pay may avoid imposition of mandatory fines. See, *e.g.*, R.C. 2925.11(E)(1)(a), 2925.03(D)(1), 2925.02(D)(1)(a), and 2929.18(B)(1). In the case at bar, Gipson was convicted of possession of cocaine in less than the bulk amount in violation of former R.C. 2925.11. At the time of the offense, former R.C. 2925.11 provided:

"(E)(1) Notwithstanding the fines otherwise required to be imposed pursuant to section 2929.11, 2929.21, or 2929.31 of the Revised Code for violations of this section and notwithstanding section 2929.14 or 2929.22 of the Revised Code, the court shall impose * * * a mandatory fine of [$1,500] if the violation of this section was a felony of the fourth degree * * *.

"* * *

"(E)(5) No court shall impose a mandatory fine pursuant to division (E)(1) of this section upon an offender who alleges, in an affidavit filed with the court prior to his sentencing, that he is indigent and is unable to pay any mandatory fine

imposed pursuant to that division, if the court determines the offender is an indigent person and is unable to pay the fine." (145 Ohio Laws, Part III, 5782.)

{¶ 10} Former R.C. 2925.11(E) is similar to the current statutory framework in Ohio governing the imposition of mandatory fines for violations of R.C. 2925.11. See R.C. 2925.11(E)(1)(a) and 2929.18(B)(1).[2] Specifically, former R.C. 2925.11(E), like current provisions of Ohio law (R.C. 2925.11[E][1][a] and 2929.18[B][1]), clearly requires that a sentencing court shall impose a mandatory fine upon an offender unless (1) the offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine, and (2) the court determines that the offender is in fact an indigent person and is unable to pay the mandatory fine. Neither of the two prerequisites for the avoidance of a mandatory fine occurred in the case at bar.

---

2. R.C. 2925.11(E) currently provides, in part:

"In addition to any prison term * * * and in addition to any other sanction that is imposed for the offense under this section or sections 2929.11 to 2929.18 of the Revised Code, the court that sentences an offender who is convicted of or pleads guilty to a violation of division (A) of this section shall do all of the following that are applicable regarding the offender:

"(1)(a) If the violation is a felony of the first, second, or third degree, the court shall impose upon the offender the mandatory fine specified for the offense under division (B)(1) of [R.C. 2929.18] unless, as specified in that division, the court determines that the offender is indigent."

R.C. 2929.18 provides, in part:

"(B)(1) For a first, second, or third degree felony violation of any provision of Chapter 2925., 3719., or 4729. of the Revised Code, the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."

I

The Requirement of Filing

{¶ 11} Former R.C. 2925.11(E)(5), like the current statutes governing the avoidance of mandatory fines for drug abuse offenders who are indigent and are unable to pay such fines (R.C. 2925.11[E][1][a] and 2929.18[B][1]), clearly requires that the offender's affidavit must be filed with the court prior to sentencing. The phrase "prior to his sentencing" in former R.C. 2925.11(E)(5) and the phrase "prior to sentencing" in R.C. 2929.18(B)(1) could be interpreted to mean that the affidavit must be filed prior to a scheduled sentencing hearing. Conversely, the phrases could be interpreted to mean that the affidavit must be filed prior to the filing of a journal entry reflecting the trial court's sentencing decision. Although we believe that the best practice would be to require the filing of the affidavit prior to the *sentencing hearing*, we interpret former R.C. 2925.11(E)(5) and the current analogous provisions of R.C. 2929.18(B)(1) to mean that the affidavit must be formally filed with the court prior to the filing of a journal entry reflecting the trial court's sentencing decision.

{¶ 12} The court of appeals' majority apparently determined that Gipson's affidavit was timely "filed" prior to sentencing because defense counsel had attempted to submit the affidavit to the trial judge at the sentencing hearing. The court of appeals' majority reached this conclusion even though there is absolutely no indication in the record that the affidavit was formally filed with the clerk of court and time-stamped at any time prior to the filing of the trial court's sentencing decision. We disagree with the judgment of the court of appeals' majority on the question of whether Gipson's affidavit was timely "filed."

{¶ 13} We hold that the requirement of former R.C. 2925.11(E)(5) (and the current analogous provisions of R.C. 2929.18[B][1]) that an affidavit of indigency must be "filed" with the court prior to sentencing means that the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the

clerk of court, *i.e.*, time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision. We reach this conclusion based, in part, upon a number of our recent decisions involving an analogous requirement of R.C. 2945.05 that a jury waiver form must be "filed" in a cause and made part of the record to effectuate a valid waiver of the right to trial by jury. Specifically, in a series of recent cases, we have definitively determined that the requirement in R.C. 2945.05 that a jury waiver form must be "filed in said cause and made a part of the record thereof" means that the form must be time-stamped and included in the record. See *State v. Pless* (1996), 74 Ohio St.3d 333, 658 N.E.2d 766; *State v. Haught* (1996), 76 Ohio St.3d 645, 670 N.E.2d 232; and *State v. Loesser* (1997), 80 Ohio St.3d 419, __ N.E.2d __. By analogy, R.C. 2929.18(B)(1) and former R.C. 2925.11(E)(5) are clear and unambiguous in requiring that an affidavit of indigency must be "filed" with the court prior to sentencing, and the act of filing certainly includes the concept of time-stamping. See, also, R.C. 2303.08 ("The clerk of the court of common pleas shall indorse on each pleading or paper in a cause filed in the clerk's office the time of filing."); and R.C. 2303.10 ("The clerk of the court of common pleas shall indorse upon every paper filed with him the date of the filing thereof.").

{¶ 14} In the case now before us, the record clearly indicates that Gipson's affidavit of indigency was never formally filed with the court until it was submitted to the court as part of a motion to abate the mandatory fine.[3] The motion to abate

---

3. We are aware, of course, that Civ.R. 5(E) provides that "[t]he filing of pleadings and other papers with the court, *as required by these rules*, shall be made by filing them with the clerk of court, *except that the judge may permit the papers to be filed with the judge, in which event the judge shall note the filing date on the papers and forthwith transmit them to the office of the clerk*." (Emphasis added.) We are also aware that Crim.R. 49(C) refers to Civ.R. 5(D) regarding the requirements of "filing." However, we note, in passing, that there is no indication in the record that the affidavit was ever handed to the trial judge at the sentencing hearing or that the trial judge accepted Gipson's affidavit as a formal "filing." Moreover, during oral arguments before this court, counsel for Gipson expressly acknowledged that the trial judge refused to accept/receive the affidavit at the hearing, which apparently prompted counsel to "file" the affidavit with the clerk of court as part of Gipson's July 26, 1995 motion to abate the fine.

the mandatory fine was filed July 26, 1995, more than two weeks after the trial court had verbally pronounced sentence and more than a week after the filing of the trial court's sentencing entry. Therefore, as Judge Patton noted in his concurring and dissenting opinion in the court of appeals, "Defendant did not file his affidavit of indigency with the trial court prior to sentencing. In fact, defendant did not file his motion to abate the fine until eight days after sentencing. Although the transcript of the sentencing shows defendant offered an affidavit at that time, he did not file that affidavit in compliance with the statute. 'Filing' for purposes of the statute requires the clerk of the court to indorse the time of filing on each pleading or filing. * * * Because the affidavit was not timely filed, the trial judge should not have considered the affidavit in the first instance."

{¶ 15} At oral argument before this court, a question arose whether the state had "waived" the issue concerning the timeliness of the "filing" of Gipson's affidavit since the state never raised that issue in the court of appeals. However, we believe that the required filing of an affidavit of indigency for purposes of avoiding a mandatory fine is, in effect, a jurisdictional issue. The present and former versions of R.C. 2925.11 require a sentencing court to impose a mandatory fine upon an offender unless the offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and unless the court determines that the offender is an indigent person and is unable to pay the mandatory fine. R.C. 2925.11(E)(1)(a), 2929.18(B)(1) and former R.C. 2925.11(E). Thus, the trial court could not have avoided imposing the statutory fine since the required affidavit of indigency was never properly "filed" with the court prior to sentencing. The timeliness of the filing of Gipson's affidavit has been properly raised before this court, and, in our judgment, the fact that the affidavit was not properly filed prior to sentencing is, standing alone, a sufficient reason to find that the trial court committed no error by imposing the statutory fine.

II

The Trial Court's Determination

**{¶ 16}** Moreover, and in any event, even if Gipson's affidavit had been filed in a timely manner, the trial court's decision imposing the mandatory fine and requiring Gipson to satisfy that fine over the course of his probation was not an error of law and/or an abuse of the trial court's discretion. For purposes of former R.C. 2925.11(E) and the current analogous provisions of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1), an offender who files an affidavit alleging that he or she is indigent and is unable to pay a mandatory fine is *not* automatically entitled to a waiver of that fine. Once again, these statutes clearly require imposition of a mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines. Here, the trial court suspended Gipson's jail sentence and placed him on probation to give him an opportunity to straighten out his life and to pay the mandatory fine. The transcript of the sentencing hearing suggests that Gipson was actively seeking employment at the time of the sentencing hearing, that he had managed to retain and pay for a private defense attorney, and that he was an able-bodied young man with some employment potential. Additionally, evidence at trial indicated that Gipson may have had an employment history. Under these circumstances, the trial court apparently believed that Gipson was capable of paying the mandatory fine through monthly cash payments or by performing community service. We find no error in this regard. Specifically, we find that the trial court could have reasonably determined that although Gipson was indigent at the time of the sentencing hearing, he was not "unable to pay" the mandatory fine over the course of his probation.

**{¶ 17}** Nevertheless, the court of appeals' majority, in reversing that portion of the trial court's judgment imposing the mandatory fine, apparently concluded that the trial court had abused its discretion by requiring payment of the fine *in futuro* since there was no dispute at the time of the sentencing hearing that Gipson

was, at that particular moment, indigent and unemployed. Specifically, the court of appeals' majority relied upon the case of *State v. Pendleton* (1995), 104 Ohio App.3d 785, 663 N.E.2d 395, wherein it is stated that "the mere possibility that the offender may be able to pay the fine in the future, or pay it in the future in installments, is not a proper basis on which to find that a defendant is not indigent." *Pendleton* at 788, 663 N.E.2d at 397 (interpreting former R.C. 2925.03[L]). See, also, *State v. Lefever* (1993), 91 Ohio App.3d 301, 309, 632 N.E.2d 589, 594 (" '[A] trial court may not properly use the mere possibility of an offender's future ability to pay a fine as the basis for determining that the imposition of that fine is not prohibited by [former] R.C. 2925.03[L].' "). The court of appeals' majority also relied heavily on *State v. Ruzicka* (Jan. 13, 1994), Cuyahoga App. No. 64476, unreported, 1994 WL 11325, wherein it is stated, "[I]t is our reasoned opinion that a trial court abuses its discretion by imposing a mandatory fine where the defendant's affidavit of indigency remains unopposed and the appellate record does not contain sufficient evidence to support a conclusion that the defendant *was able to pay* the fine." (Emphasis added.) We respectfully disagree with the court of appeals' analysis of this issue.

{¶ 18} With respect to the court of appeals' reliance on the above-quoted passage from *Ruzicka*, we note that there is no requirement in either the present or current versions of R.C. 2925.11 that a trial court must make an affirmative finding that an offender is *able to pay* a mandatory fine. To the contrary, former R.C. 2925.11(E)(5) and the analogous requirements of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1) provide that a mandatory fine shall not be imposed on an offender where the offender has filed the required affidavit prior to sentencing and the trial court determines that the offender is an indigent person *and is unable to pay* the mandatory fine. In his concurring and dissenting opinion in the court of appeals, Judge Patton recognized, and we agree, that the burden is upon the offender to affirmatively demonstrate that he or she is indigent and is *unable to pay* the

mandatory fine. Thus, the court of appeals' reliance on *Ruzicka* is misplaced. The issue here is *not* whether the record would support a determination that Gipson is able to pay the mandatory fine but, rather, whether the trial court committed an error of law and/or abused its discretion in finding that although Gipson was indigent at the time of the sentencing hearing, he was not "unable to pay" the mandatory fine over the course of his probation.

{¶ 19} Moreover, the case at bar is clearly distinguishable from *Pendleton* and *Lefever.* Those two cases hold that a trial court abuses its discretion by imposing a mandatory fine where an indigent defendant has been sentenced to incarceration and will be unable to pay the statutory fine. For instance, in *Lefever*, the court of appeals found that a trial court had committed reversible error by imposing a mandatory fine upon an indigent defendant under the following circumstances: "Lefever filed an affidavit of indigency asserting that he could not pay the fines and that he has no assets of any kind. No evidence controverting these was produced. The record also shows that Lefever was sentenced to no less than five nor more than twenty-five years' incarceration, with five years' actual incarceration. Because Lefever's incarceration will prohibit him from retaining an income-producing job, he will not be in a position to pay the fines for at least five years." *Lefever* at 309, 632 N.E.2d at 594. Similarly, *Pendleton* involved a situation where an indigent defendant was sentenced to a term of incarceration and was ordered to pay a mandatory fine. Under these circumstances, the *Pendleton* court followed the reasoning and holding of *Lefever*. *Pendleton* at 787-788, 663 N.E.2d at 396-397. See, also, *State v. Gutierrez* (1994), 95 Ohio App.3d 414, 418, 642 N.E.2d 674, 676 (a trial court abuses its discretion by imposing a mandatory fine under R.C. 2925.11 where the defendant's incarceration would preclude payment of the mandatory fine).

{¶ 20} In contrast to *Pendleton*, *Lefever,* and *Gutierrez*, the trial court in this case suspended Gipson's sentence of incarceration, placed him on probation, and

14

ordered him to satisfy the mandatory fine over the course of his probation. On this basis, and on the basis of Gipson's youth and physical stature, the trial court noted that "[t]here ought to be a lot of jobs he can handle, so I don't see any reason why he can't pay this [mandatory fine]." The trial court also offered Gipson a reasonable alternative to monthly cash payments, stating that "if he [Gipson] doesn't want to do it by cash, he can do it by community service." Therefore, although Gipson had no job at the time of sentencing, the trial court obviously determined that Gipson could work, could perform community service, and could satisfy the fine over the four-year period of probation. We have no reason to question the trial court's findings in regard to these matters.

{¶ 21} Gipson protests, however, that it is never proper for a trial court to consider an offender's future ability to pay a mandatory fine because, according to Gipson, "[i]t is defendant's status at the time of sentencing that is determinative whether he is indigent." However, we do not believe that former R.C. 292511(E)(5) was intended to preclude a trial court from imposing fines on able-bodied defendants who are fully capable of work but who happen to be indigent and unemployed at the moment of sentencing. Obviously, for purposes of former R.C. 2925.11(E)(5) and the current analogous provisions of R.C. 2925.11(E)(1)(a) and 2929.18(B)(1), a trial court's determination whether an offender is indigent *and* is unable to pay a mandatory fine can (and should) encompass future ability to pay. If the General Assembly had intended otherwise, the statutes would have been written to permit a waiver of the mandatory fines based solely on a defendant's present state of indigency, and would not have also required trial courts to consider the additional question whether the offender is "unable to pay."

{¶ 22} Accordingly, for the foregoing reasons, we reverse the judgment of the court of appeals on the sole issue before us and reinstate the judgment of the trial court.

*Judgment reversed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————