OPINION
{¶ 1} Defendant-appellant, Michael Bolden, appeals his conviction in the Preble County Court of Common Pleas for possession of cocaine. We affirm the decision of the trial court, as modified herein.
 {¶ 2} On April 1, 2001, appellant was driving a U-Haul truck on Interstate 70. Trooper Shawn Smart of the Ohio State Highway Patrol noticed appellant traveling at a speed above the posted limit. Trooper Smart clocked appellant on radar at 73 m.p.h. in a construction zone with a posted limit of 55 m.p.h. Trooper Smart then pursued the U-Haul vehicle and "paced" it at 70 m.p.h. Trooper Smart then pulled over the vehicle.
 {¶ 3} Trooper Smart approached the vehicle and asked appellant for his driver's license and the rental paperwork for the U-Haul. Trooper Smart then went back to his cruiser and called for a drug-sniffing canine before he began the driver's license and vehicle registration check. The drug-sniffing canine arrived and alerted to drugs in the vehicle before Trooper Smart received the driver's license information necessary to issue a ticket.
 {¶ 4} Trooper Smart issued appellant a ticket for speeding once he received the information. The U-Haul was towed out of the construction zone to a nearby garage. Approximately two kilograms of cocaine were found in the vehicle.
 {¶ 5} Appellant was charged with possession of cocaine and possession of criminal tools. Appellant moved to suppress evidence arguing there was no reasonable suspicion to search the vehicle and the trooper detained him longer than necessary to effectuate the purpose of the stop. The trial court denied the motion.
 {¶ 6} Appellant entered a no contest plea to the possession of cocaine charge and the possession of criminal tools was dismissed. The trial court accepted the plea and a sentencing hearing was held on March 18, 2003. The court imposed the minimum sentence of three years of incarceration, fined appellant the mandatory amount of $5,000, and revoked appellant's driver's license for six months. Appellant appeals the conviction and fine, raising three assignments of error:
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "The detention and subsequent search of the motor vehicle in which appellant was driving was without probable cause and violated appellant's fourth amendment rights against unlawful search and seizures."
 {¶ 9} Appellant asserts that the trial court erred by failing to grant his motion to suppress evidence. In support of this assertion, appellant contends that Trooper Smart did not have reasonable suspicion for searching his vehicle and that his detention was longer than necessary to effectuate the purpose of the stop.
 {¶ 10} When reviewing the denial of a motion to suppress, we are bound to accept the trial court's findings of fact which are supported by competent, credible evidence. State v. Williams (1993), 86 Ohio App.3d 37,41. Relying on the trial court's factual findings, we then must determine "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688,691.
 {¶ 11} The Ohio Supreme Court has held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under theFourth Amendment to the United States Constitution * * *." Dayton v.Erickson, 76 Ohio St.3d 3, 1996-Ohio-431, syllabus, following UnitedStates v. Ferguson (C.A. 6, 1993), 8 F.3d 385.
 {¶ 12} Trooper Smart testified at the suppression hearing that he initiated the traffic stop of appellant's vehicle because appellant was speeding, a violation of R.C. 4511.21. Revised Code section 4511.21(D)(6), in pertinent part, states that no person shall operate a motor vehicle "at a speed exceeding the posted speed limit upon a freeway * * *."
 {¶ 13} Trooper Smart testified that he clocked appellant on radar traveling at 73 m.p.h. in a posted 55 m.p.h. zone. Trooper Smart further testified that he followed appellant and "paced" his speed at 70 m.p.h., and that he witnessed appellant make two lane changes without signaling in an area where lane changing was prohibited because of construction. Trooper Smart then initiated a traffic stop at 10:25 a.m.
 {¶ 14} Based upon the testimony of Trooper Smart and the language of the relevant statute, this court finds that the trooper had a reasonable suspicion of the occurrence of a traffic violation. Furthermore, probable cause existed to stop appellant for a traffic violation.
 {¶ 15} Appellant also asserts that he was unlawfully detained beyond the time necessary to effectuate the purpose of his stop, and, as a result, the evidence acquired during the search of his vehicle should have been suppressed. In conducting a stop of a motor vehicle for a traffic violation, an "officer may detain an automobile for a time sufficient to investigate the reasonable, articulable suspicion for which the vehicle was initially stopped." State v. Cahill, Shelby App. No. 17-01-19, 2002-Ohio-4459, at ¶ 21, citing State v. Smith (1996),117 Ohio App.3d 278, 285.
 {¶ 16} However, the duration of the stop "is limited to `effectuate the purpose for which the initial stop was made.'" Id., quoting State v.Venham (1994), 96 Ohio App.3d 649, 655, citing United States v.Brignoni-Ponce (1975), 422 U.S. 873, 95 S.Ct. 2574; State v. Chatton
(1984), 11 Ohio St.3d 59, 63; State v. Bevan (1992), 80 Ohio App.3d 126,129.
 {¶ 17} Thus, when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. State v. Keathley (1988), 55 Ohio App.3d 130, 131. This time period also includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. See Delaware v. Prouse (1979), 440 U.S. 648, 659, 99 S.Ct. 1391. However, the detention of a stopped driver may only continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. State v. Myers (1990), 63 Ohio App.3d 765,771; Venham, 96 Ohio App.3d at 655.
 {¶ 18} In addition, a lawfully detained vehicle may be subjected to a canine sniff of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. State v. Rusnak (1997),120 Ohio App.3d 24, 28. Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of theFourth Amendment to the Constitution." Id.; United States v. Place
(1983), 462 U.S. 696, 103 S.Ct. 2637. Thus, a canine sniff of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop. Moreover, if a trained narcotics dog "alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband" Cahill, Shelby App. No. 17-01-19, 2002-Ohio-4459, at ¶ 22.
 {¶ 19} In the case sub judice, appellant was first stopped at 10:25 a.m. Trooper Smart then approached appellant's vehicle. Appellant was travelling with a single passenger, his uncle, Charles Jones. Trooper Smart asked appellant for a driver's license and the rental paperwork for the vehicle. Trooper Smart asked about their destination and where they were coming from. Trooper Smart then separated the two men and brought appellant back to his cruiser. Trooper Smart conducted a frisk of appellant and placed him in the back seat of his police cruiser.
 {¶ 20} At 10:34 a.m., before he ran a check of appellant's license and vehicle registration, the trooper called for a canine unit from nearby Wayne County, Indiana for a drug sniff. Trooper Smart had used the canine earlier that day and knew the dog was readily available. Trooper Smart then requested a license and registration check.
 {¶ 21} Deputy Ron Lindley of the Wayne County Sheriff's Department and his canine, Dax, arrived at the scene of the stop at 10:48 a.m., 14 minutes after receiving the call, 23 minutes after appellant was first stopped by Trooper Smart. Trooper Smart removed Jones from the vehicle because Deputy Lindley did not want any passengers in the vehicle as Dax began the drug sniff.
 {¶ 22} Deputy Lindley testified at the suppression hearing that the drug dog, Dax, "alerted" to drugs in the vehicle.
 {¶ 23} Deputy Lindley explained that an "alert" to the possible presence of drugs occurs when the dog's behavior changes and that an "indication" occurs when the dog actually "stops sniffing and barks." The trooper further testified that while working along the "driver's side * * * right up underneath the cab," Dax stopped and started barking.
 {¶ 24} Deputy Lindley informed Trooper Smart that Dax "indicated on the presence of narcotics inside the vehicle." After a quick initial search, the vehicle was removed from the construction zone and towed to Herschel's Garage. A search of the vehicle at the garage revealed approximately two kilograms of cocaine.
 {¶ 25} Trooper Smart testified that issuing a traffic ticket ordinarily takes him 20 to 30 minutes. The initial canine sniff occurred within this time frame. Moreover, once Dax alerted to the possible presence of drugs, Trooper Smart had the requisite probable cause to search the vehicle. Therefore, we conclude that, under the facts and circumstances of this case, appellant was not detained longer than constitutionally permitted. Thus, the trial court did not err in denying appellant's motion to suppress. Consequently, the first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "The judgment of conviction entry filed on march 18, 2002, did not comply with criminal rule 32(c), in that it fails to state on the judgment entry of sentence the plea previously entered by the defendant/appellant in the instant case."
 {¶ 28} Appellant contends that the Judgment Entry of Conviction does not comply with Crim.R. 32(C) because it fails to set forth his plea.
 {¶ 29} Crim.R. 32(C) states: "A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."
 {¶ 30} The judgment entry of conviction in this case states that appellant was found guilty of possession of cocaine, but does not state that appellant pled no contest to the charge. Strict compliance with Crim.R. 32(C) is required. See State v. Lovelace (Jan. 15, 1999), Hamilton App. No. C-970983. Therefore, the failure to cite the plea in the judgment entry requires a correction of the record. Accordingly, appellant's second assignment of error is well-taken and the trial court's sentencing entry is modified under App.R. 12(B) to reflect the inclusion of appellant's no contest plea.
 {¶ 31} Assignment of Error No. 3:
 {¶ 32} "It was err [sic] for the sentencing court to impose a fine of $5,000.00 upon the defendant/appellant in the instant case without additional investigation or hearing, as the record reflected that he had filed an affidavit of indigency for an attorney to be appointed because he was without funds. The state never disputed this."
 {¶ 33} Appellant argues "the matter should be remanded to the Trial Court for additional hearing on the sanction imposed at the sentencing hearing requiring payment of a mandatory fine or portion thereof."
 {¶ 34} R.C. 2929.18 imposes a mandatory fine upon all first, second, and third-degree drug offenders. R.C. 2929.18(B)(1) requires "imposition of the mandatory fine unless (1) the offender's affidavit is filed prior to sentencing, and (2) the trial court finds that the offender is an indigent person and is unable to pay the mandatory fines."State v. Gipson, 80 Ohio St.3d 626, 634, 1998-Ohio-659.
 {¶ 35} The filing of an affidavit of indigency by a defendant does not automatically entitle the defendant to a waiver of the mandatory fine. Id. The Ohio Supreme Court has held that the requirement that an affidavit must be filed with the court prior to sentencing means that "the affidavit must be delivered to the clerk of court for purposes of filing and must be indorsed by the clerk of court, i.e., time-stamped, prior to the filing of the journal entry reflecting the trial court's sentencing decision." Id. at syllabus. Moreover, the determination that a defendant is indigent for purposes of appointed counsel is separate and distinct from a determination of being indigent for purposes of paying a mandatory fine. State v. Stearns (Oct. 9, 1997), Cuyahoga App. No. 71851.
 {¶ 36} In this case, appellant only filed affidavits of indigency with respect to the appointment of counsel. Appellant failed to file an affidavit averring that he was indigent and unable to pay the mandatory fine. Thus, the court was unable to find that he was indigent and unable to pay the fine. Furthermore, this court notes that appellant's bond was set at $50,000 and on April 16, 2001, appellant was able to post a 10% cash appearance bond of $5,041 in order to be released.
 {¶ 37} The imposition of the fine, therefore, was mandated by law. Accordingly, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in imposing the mandatory fine. Appellant's third assignment of error is overruled.
 {¶ 38} Judgment affirmed as modified.
Young and Walsh, JJ., concur.