[Cite as *State v. Lewis*, 2018-Ohio-3681.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellant | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| ANDREW S. LEWIS | : | Case No. 18-CA-17 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                 Pleas, Case No. 17-CR-00314




JUDGMENT:                        Affirmed




DATE OF JUDGMENT:                September 11, 2018




APPEARANCES:

For Plaintiff-Appellant                    For Defendant-Appellee

WILLIAM C. HAYES                           ROBERT E. CALESARIC
Licking County Prosecutor                  35 South Park Place
By:  DANIEL J. BENOIT                       Suite 150
Assistant Prosecuting Attorney             Newark, OH  43055
20 S. Second Street, 4th Floor
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1}   Plaintiff-Appellant the State of Ohio appeals the February 22, 2018 judgment of the Licking County Court of Common Pleas granting Defendant-Appellee Andrew S. Lewis' motion to suppress.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   In March 2017, Licking County Sheriff's Office Detective Kyle Boerstler was working surveillance at a known drug house in the city of Newark. Boerstler had information indicating that the residents of the home were dealing either marijuana or cocaine. While watching the home, Boerstler observed Lewis and his wife arrive at the house, take some bags out of their car, and enter the home. They then left less than 20 minutes later without the bags.

{¶ 3}   A week later, on March 18, 2017, while watching the same house, Boerstler again observed Lewis arriving at the home again, this time by himself. Again Lewis took bags from his car, went inside, and left shortly thereafter without the bags.

{¶ 4}   Boerstler decided he would wait for Lewis to commit a traffic violation, pull him over, and investigate why he was at the drug house two weeks in a row. However, because Boerstler was in an unmarked vehicle, it was necessary for him to recruit patrolmen in marked vehicles to make the traffic stop. He notified Newark Division of Police Detective Ryan Fumi and canine Officer David Burris, of his plan.

{¶ 5}   Boerstler followed Lewis and observed him failing to properly signal as he merged onto Route 16. He relayed that information to Fumi and Burris, although neither were nearby to observe the traffic violation. Burris arrived on Route 16 first and stopped Lewis based on Boerstler's observation. Fumi pulled up behind Burris. Each officer had

an operational dash cam which recorded the stop. Boerstler watched from a location close by.

{¶ 6}    Both Fumi and Burris approached Lewis' car. Burris told Lewis why he was pulled over. As he did this, he noticed an odor of raw marijuana in Lewis' vehicle. Fumi did not detect the odor. Burris asked Lewis if he could search the car and Lewis asked for an attorney. Fumi asked why he needed one if he hadn't done anything wrong. Lewis then consented to the search.

{¶ 7}    Because Lewis gave consent, Burris felt no need to deploy his dog for a sniff.  Five minutes into the stop, Burris searched the car. No drugs or other contraband were found. Burris completed his search and finished with the traffic stop in 13 minutes. He nonetheless detained Lewis based on the smell of raw marijuana and the fact Lewis possessed a significant amount of cash. Lewis offered to show Burris his bank records showing the withdraw of the cash, which he stated he withdrew for his wife. Burris radioed Boerstler, told him he could smell marijuana, but could find nothing. Boerstler stated he would come and talk to Lewis. Officer Fumi advised Lewis that Boerstler was on his way, that he had some questions for Lewis, and it would be best if Lewis cooperated. At no point did Burris or Fumi provide Lewis with *Miranda* warnings.

{¶ 8}    Boerstler showed up at the scene 5 and a half minutes after the fruitless search of Lewis' vehicle and 18 and a half minutes into the stop. Boerstler advised Lewis of his investigation and his observations and stated he wanted to search Lewis' home. Lewis again asked to speak with an attorney. Boerstler told Lewis he was not under arrest and continued asking questions.

{¶ 9}  Twenty-one minutes into the stop, Boerstler let Lewis use his phone to contact an attorney. Lewis spoke with his attorney for 13 minutes while seated in the back of Boerstler's car.

{¶ 10} Thereafter there was some conversation between Lewis and Boerstler as to whether or not Lewis was going to permit Boerstler to search his home. Lewis stated he wanted to contact his attorney again. Instead of permitting Lewis to do so, Boerstler advised Lewis that if he didn't consent, he would have Lewis transported to the police department while he obtained a warrant.

{¶ 11}  This concerned Lewis as he had dogs at home and did not want them to get hurt. Further, he did not want his wife to experience officers showing up unannounced while he wasn't home as she has some health concerns that could be exacerbated by stress. Based on these concerns, Lewis consented to the search and led officers to his home. By this time roughly 90 minutes had elapsed since Lewis was stopped for the traffic violation.

{¶ 12} At Lewis' home, officers discovered a small marijuana grow, hashish, and weapons. Lewis was subsequently charged with cultivation of marijuana in violation of R.C. 2925.03(A)(C)(5)(d), possession of hashish in violation of R.C. 2925.11(A)(C)(7)(e), and trafficking in marijuana in violation of R.C. 2925.03(A)(1)(2)(C)(3)(a). The indictment also contained forfeiture specifications for U.S. currency and firearms.

{¶ 13} On June 14, 2017, Lewis filed a motion to suppress. He argued the evidence and his statements were obtained as a result of an impermissibly prolonged traffic stop. On November 14, 2017, a hearing was held on the matter. Each party submitted post-hearing briefs.

{¶ 14} On February 22, 2018, the trial court issued its ruling granting the motion to suppress. The court found that while pretextual stops are permissible, once the search of Lewis' vehicle was concluded and nothing found, Lewis should have been permitted to leave. The trial court further found the search of Lewis' home was not the product of voluntary consent as he had not been advised of his *Miranda* warnings and was detained at a traffic stop for over 90 minutes after the search yielded nothing.

{¶ 15} The state timely filed a notice of appeal with proper certification in compliance with Crim.R. 12(K). The matter is now before this court for consideration. The state raises one assignment of error:

I

{¶ 16} "THE TRIAL COURT ERRED IN GRANTING THE APPELLEE'S MOTION TO SUPPRESS, BY DETERMINING THAT THE STOP OF THE APPELLEE'S VEHICLE WAS IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION."

{¶ 17} In its sole assignment of error, the state argues the trial court erred in granting appellee's motion to suppress. We disagree.

{¶ 18} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or

correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (8th Dist.1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (4th Dist.1993); *Guysinger*. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 19} In its assignment of error, the state raises three distinct issues. Specifically, that the trial court erred when it determined 1) the state did not meet its burden to establish a traffic violation occurred; 2) the traffic stop was unconstitutionally prolonged; and 3) the search of appellee's home was not consensual.

{¶ 20} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. See *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271.

Propriety of the Traffic Stop

{¶ 21} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. *State v. Carothers*, 5th Dist. Tuscarawas No. 2015-AP-040017, 2015-Ohio-4569, ¶ 21.

{¶ 22} The state first argues that the trial court erred in finding no traffic violation occurred. A review of the trial court's decision, however, indicates that the court ultimately found there was evidence to support the traffic violation and that "these kinds of stops," i.e. pretextual, are permissible. Decision and Entry Granting Defendant's Motion to Suppress Evidence, February 22, 2018 at 7, citing *Whren v. United States*, 517 U.S. 806 (1996). After a review of the transcript and dash cameras of Officers Burris and Fumi, we do not disagree with the trial court's conclusion.[1]

Extension of the Traffic Stop

{¶ 23} The State next argues the trial court erred in finding the traffic stop was unconstitutionally prolonged. We disagree.

{¶ 24} "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in

---

[1] We note that on the first page of the Decision and Entry Granting Defendant's Motion to Suppress Evidence, the trial court finds the state failed to meet its burden to establish that a traffic violation occurred. However, after its analysis, on page seven, the court found that evidence indicated appellee failed to properly signal, and that pretextual stops are permissible. We rely, then, on the trial court's ultimate conclusion.

isolation each articulated reason for the stop." *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, paragraph two of the syllabus. "The focus of the inquiry, therefore, is whether there was an illegally prolonged detention" given the officer's observations. *Id*. at ¶ 8.

{¶ 25} In *State v. Batchili*, supra, the Supreme Court of Ohio stated:

> [W]hen detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning. *State v. Keathley* (1988), 55 Ohio App.3d 130, 131 [562 N.E.2d 932]. This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates. *State v. Bolden*, Preble App. No. CA2003-03-007, 2004-Ohio-184 [2004 WL 77617], ¶ 17, citing *Delaware v. Prouse* (1979), 440 U.S. 648, 659, 99 S.Ct. 1391 [59 L.Ed.2d 660]. 'In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' *State v. Carlson* (1995), 102 Ohio App.3d 585, 598–599 [657 N.E.2d 591], citing *State v. Cook* (1992), 65 Ohio St.3d 516, 521–522 [605 N.E.2d 70], and *U.S. v. Sharpe* (1985), 470 U.S. 675, 105 S.Ct. 1568 [84 L.Ed.2d 605].

{¶ 26} *Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

{¶ 27} The detention of a motorist may continue beyond the time frame necessary to conduct the stop for purposes of the traffic violation when "additional facts are encountered that give rise to a reasonable, articulable suspicion [of criminal activity] beyond that which prompted the initial stop [.]" *State v. Smith*, 117 Ohio App.3d 278, 285, 690 N.E.2d 567(1st Dist. 1996), citing *State v. Myers*, 63 Ohio App.3d 765, 771, 580 N.E.2d 61 (2nd Dist.1990). Reasonable articulable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *State v. Bobo*, 37 Ohio St.3d 177, 178, 524 N.E.2d 489 (1988).

{¶ 28} First, it cannot be said that officers diligently pursued an investigation into the reason for the stop – the failure to properly signal. While Lewis was advised why he was pulled over, that is where investigation of the purpose of the stop ended. Burris testified he never questioned Lewis about the turn signal because he did not observe the infraction. T. 62. Lewis' vehicle was searched before his operator's license information was run to determine if it was valid and if he had any outstanding warrants. By that time, more than 13 minutes had elapsed. T. 37. Lewis was never cited for the traffic violation. Burris testified he finished with the traffic stop issue and searching Lewis' vehicle before Boerstler ever arrived on the scene. T. 69, State's exhibits 1 and 2. While Boerstler did witness the traffic infraction, he never addressed it with Lewis. Rather, he almost immediately advised Lewis he wanted to search his residence. T. 76, State's exhibits 1 and 2. By that time, more than a half hour had passed.

{¶ 29} Second, while the stop could have been continued past the time reasonably necessary to dispense with the traffic violation based on the odor of raw marijuana, an

investigation into that factor yielded nothing. An officer may briefly extend a seizure to ask about the presence of illegal drugs or weapons. *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762 (1997). Such an inquiry need not be based on reasonable suspicion because it serves "a legitimate public concern" that outweighs an individual's interest in resuming their normal activities. *Id.* If, when inquiring, "the officer ascertain[s] reasonably articulable facts giving rise to a suspicion of criminal activity," the officer may continue the detention and conduct "a more in-depth investigation * * *." *Id.* If facts giving rise to reasonable suspicion do not present themselves, however, "[a] continued detention to conduct a search constitutes an illegal seizure." *Id.* at paragraph one of the syllabus.

{¶ 30} Nothing observed by any of the officers warranted detaining Lewis beyond the unproductive search of his vehicle. His continued detention beyond the vehicle search was not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, and thus was an illegal seizure. We therefore agree with the trial court's analysis; following the search, Lewis should have been free to go.

Consent to Search

{¶ 31} Finally, the state argues Lewis' consent to search his home was voluntarily given. We disagree.

{¶ 32} Consent to perform a search waives the warrant requirement of the Fourth Amendment, but only when the consent is freely and voluntarily given. Whether a consent to search is voluntary or a product of duress or coercion is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). When the state relies on consent to justify a

warrantless search, the state must show by clear and convincing evidence that the consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797(1968); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990).

{¶ 33} Consent is not rendered involuntary or coerced simply because police indicate a willingness to obtain a warrant in the event consent is withheld. *State v. Dunwoody*, 5th Dist. Licking No. 2004CA49, 2005-Ohio-219, 2005 WL 121716, ¶ 19 citing *United States v. Salvo*, 133 F.3d 943 (1998). "If in fact there were grounds for the issuance of a search warrant, then the well-founded advice of a law enforcement agent that absent a consent to search a warrant can be obtained does not constitute coercion." *Id.*, citing *United States v. Farudo,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854, (1974). When consent follows some form of illegal police action, however, the question becomes whether, "granting establishment of the primary illegality, the evidence to which the instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *State v. LaPrairie*, 2nd Dist. Greene No. 2010-CA-0009 2011-Ohio-2184 ¶ 51, quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Whether consent is voluntary and whether the consent is tainted by a prior illegality and thus is fruit of the poisonous tree are separate and independent analyses. *Id.* at ¶ 52.

{¶ 34} The record supports the trial court's conclusion that Lewis' consent to search his home was involuntary. We have already determined that the trial court correctly concluded Lewis was illegally detained following the search of his vehicle. Instead of releasing Lewis, however, Fumi and Burris continued Lewis' detention, advised

him Boerstler was on his way, and further advised it would be best for Lewis if he cooperated. Once Boerstler arrived, Lewis was almost immediately given the option of consenting to a search of his home, or being held while a warrant was obtained to search the home. Because he was not released following the search of his vehicle, any evidence later seized with alleged consent was a result of an exploitation of that illegality. Moreover, any grounds for actual issuance a warrant were exceedingly thin. The only grounds presented at the hearing on consisted of Boerstler seeing Lewis at the suspect residence twice, one week apart, and carrying bags inside. The threat, therefore, of obtaining a warrant to search the home was coercive.

{¶ 35} After a careful review of the transcript and exhibits, we find the trial court did not err in grating Lewis' motion to suppress. The sole assignment of error is overruled.

By Wise, Earle, J.

Wise, John, P.J. and

Gwin, J. concur.

EEW/rw